KIM W. WEST, State Bar No. 78553
kim.west@clydeco.us
ALEC H. BOYD, State Bar No. 161325
alec.boyd@clydeco.us
CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800
Facsimile:  (415) 365-9801

Attorneys for Plaintiff
AXIS REINSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIS REINSURANCE COMPANY, a corporation,<br><br>              Plaintiff,<br><br>      v.<br><br>NORTHROP GRUMMAN CORPORATION, a corporation,<br><br>              Defendant. | Case No.<br><br>COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND DAMAGES |

For its Complaint, plaintiff AXIS REINSURANCE COMPANY, a

corporation (hereinafter "AXIS"), alleges:

## **PARTIES**

1.      Plaintiff AXIS is a corporation organized and existing under the laws of

the State of Illinois, with its principal place of business in the State of Georgia.

2.      Defendant NORTHROP GRUMMAN CORPORATION

("NORTHROP") is a corporation organized and existing under the laws of the State

of Delaware, with its present principal place of business in the State of Virginia.

/ / /

/ / /

/ / /

3034262

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND
DAMAGES

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 2201 because there is complete diversity of citizenship between the AXIS, on the one hand, and NORTHROP, on the other, and the amount in controversy exceeds $75,000.

4.     Venue for this action regarding coverage under a tower of insurance policies providing Employee Benefit Plan Fiduciary Liability Insurance to NORTHROP is proper in this District because (1) the insurance policies which govern this coverage dispute were issued to NORTHROP in this District when its principal place of business was in this District, (2) this action concerns coverage for a settlement of a lawsuit filed in this District - *In re Northrop Grumman Corp. ERISA Litigation*, U.S. District Court for the Central District of California Case No. 06-CV-6213, (3) NORTHROP does business in this District, and (4) California law and public policy govern the relevant issues in dispute.

## THE INSURANCE POLICIES AT ISSUE

### A.    The Insurance Tower

5.     For the policy period of August 1, 2006 to August 1, 2007 (the "06-07 Policy Period"), defendant NORTHROP was insured under a program of insurance providing Employee Benefit Plan Fiduciary Liability Insurance consisting of the following policies:

| Layer | Insurer | Policy No. | Limits |
|---|---|---|---|
| Primary | National Union Fire Ins. Co. of Pittsburgh, Pa. | 672-80-19 | $15,000,000 |
| 1st Excess | Continental Casualty Co. | 120196961 | $15,000,000 excess of $15,000,000 |
| 2nd Excess | Plaintiff AXIS | RLN715889/01/2006 | $15,000,000 excess of $30,000,000 |

1    **B.    The National Union Primary Policy**

2        6.    National Union Fire Insurance Co. of Pittsburgh, Pa. provides primary

3    layer coverage to NORTHROP pursuant to Employee Benefit Plan Fiduciary

4    Liability Insurance Policy No. 672-80-19 for the 06-07 Policy Period (the "National

5    Union Primary Policy"). The National Union Primary Policy contains a per Claim

6    and aggregate limit of liability of $15 million, excess of the applicable retention.  A

7    true and correct copy of the National Union Primary Policy is attached as Exhibit A.

8        7.    Section 1. ["Insuring Agreements"] of the National Union Primary

9    Policy provides, in pertinent part:

10           (a)    Solely with respect to **Claims** first made against an
             **Insured** during the **Policy Period** or the **Discovery**
11           **Period** (if applicable) and reported to the **Insurer**
             pursuant to the terms of this policy, and subject to the
12           other terms, conditions and limitations of this policy,
             this policy shall pay the **Loss** of each and every
13           **Insured** arising from a **Claim** against an **Insured** for
             any actual or alleged **Wrongful Act** by any such
14           **Insured**   (or by any employee for whom such
             **Insured** is legally responsible).

15

16       8.    Section 3 ["Definitions"] of the National Union Primary Policy, as

17    amended by Endorsement No. 3, provides in pertinent part:

18           "**Loss**" means damages, judgments, (including pre/post-
             judgment interest on a covered judgment), settlements, and
19           **Defense Costs**; however, **Loss** shall not include: (1) civil or
             criminal fines or penalties imposed by law, except (i) to the
20           extent set forth in Item 3(c) of the Declarations page for
             **Voluntary Compliance Loss**, … (iii) the five percent or less
21           civil penalty imposed upon an **Insured** under Section 502(l)
             of **ERISA** and (iv) the 20 percent or less penalty imposed
22           upon an **Insured** under Section 502(l) of **ERISA**, with
             respect to covered settlements or judgments; … or (6)
23           matters which may be deemed uninsurable under the law
             pursuant to which this policy shall be construed.

24

25    **C.    The Continental Excess Policy**

26       9.    Continental Casualty Company provides first layer excess coverage to

27    NORTHROP pursuant to Policy No. 120196961 for the 06-07 Policy Period (the

28    "Continental Excess Policy").  The Continental Excess Policy contains a per Claim

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

3070458                            3                          Case No.
COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND
DAMAGES

and aggregate limit of liability of $15 million, excess of $15 million in Underlying Insurance and the applicable retention.  A true and correct copy of the Continental Excess Policy is attached as Exhibit B.

**D.**     **The AXIS Excess Policy**

10.     Plaintiff AXIS provides second layer excess coverage to NORTHROP pursuant to SecureExcess Policy No. RLN 715998/01/2006 for the 06-07 Policy Period (the "AXIS Excess Policy").  The AXIS Excess Policy contains a per Claim and aggregate limit of liability of $15 million, excess of $30 million in Underlying Insurance and the applicable retention.  A true and correct copy of the AXIS Excess Policy is attached as Exhibit C.

11.     Section I ["Insuring Agreement"] of the AXIS Excess Policy, as amended by Endorsement No. 6, provides:

> With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**.  In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

> The insurance afforded under this Policy shall apply only after the **Underlying Insurers** and/or the I**nsureds** or the **Policyholder** shall have paid the full amount of the **Underlying Limits** for covered loss under the **Underlying Insurance** and the **Policyholder** or the **Insureds** shall have paid the full amount of the applicable retention amount under any **Underlying Insurance**.

12.     Section V ["Limits of Liability"], subparagraph C, of the AXIS Excess Policy provides:

> C.     This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND DAMAGES

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

1  payments thereunder, and shall not drop down for any
2  other reason.

3      13.    The **Underlying Insurance** consists of the National Union Primary

4  Policy and the Continental Excess Policy (the "Underlying Insurance").

5                    **THE UNDERLYING CLAIMS**

6   **A.    The *Grabek* Action**

7      14.    On September 28, 2006, a Complaint entitled *Shirley Waldbuesser,*

8  *Gary Grabek, Mark A. Geuder, Dwite Russell and Julie Spicer v. Northrop*

9  *Grumman Corporation, et al.*, was filed in the United States District Court for the

10 Central District of California as Case No. CV06-06213 on behalf of the Northrop

11 Grumman Savings Plan and the Northrop Grumman Financial Security and Savings

12 Program against NORTHROP for breach of fiduciary duty under 29 U.S.C. §

13 1132(a)(2).  This Action was later consolidated with other actions and designated as

14 *In re Northrop Grumman Corporation ERISA Litigation*, United States District

15 Court for the Central District of California Case No. CV06-06213 (the *Grabek*

16 Action).

17     15.    AXIS is informed and believes, and thereon alleges, that the *Grabek*

18 Action was tendered by NORTHROP to National Union and Continental Casualty

19 during the 06-07 Policy Period, and National Union and Continental Casualty

20 analyzed coverage for the *Grabek* Action under that 06-07 Policy Period.

21     16.    The *Grabek* Action was also tendered to AXIS during the 06-07 Policy

22 Period, and AXIS fully reserved its rights under the AXIS Excess Policy.

23     17.    On March 29, 2011, the *Grabek* Action was certified as a class action

24 under Federal Rule of Civil Procedure 23(b)(1), plaintiffs Grabek, Geuder, Spicer

25 and Russell were appointed class representatives, and class counsel was appointed.

26  **B.    The Department of Labor ("DOL") Investigation**

27     18.    AXIS is informed and believes, and thereon alleges, that in March

28 2014, the DOL instituted an investigation of the Northrop Grumman Savings Plan

3070458                              5                              Case No.
COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND
DAMAGES

(the "Plan") pursuant to § 504(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1134(a)(1), to determine whether any person had violated Title I of ERISA and whether potential violations may have occurred with respect to the administration and/or operation of the Plan (the "DOL Investigation").

19.    AXIS is informed and believes, and thereon alleges, that NORTHROP thereafter tendered the DOL Investigation to National Union, Continental Casualty and AXIS.

20.    AXIS is informed and believes, and thereon alleges, that pursuant to Section 8 ["Notice/Claim Reporting Provisions"], subparagraph (b) of the National Union Primary Policy, National Union and Continental Casualty deemed the DOL Investigation to allege "the same or related" Wrongful Acts which were previously alleged in the *Grabek* Action, and therefore deemed the two claims to be "related" and first made at the time notice was given of the *Grabek* Action.  Consequently, coverage for the DOL Investigation was treated by National Union and Continental Casualty under the same 06-07 Policy Period as the earlier tendered *Grabek* Action.

## THE SETTLEMENTS OF THE UNDERLYING CLAIMS

### A.    The Settlement of the DOL Investigation

21.    On December 9, 2016, NORTHROP entered into a settlement agreement with the DOL to resolve the DOL Investigation (the "DOL Settlement Agreement").

/ / /

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND DAMAGES

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

22.     The DOL Settlement Agreement further specified ███████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████

23.     Section I.A of the DOL Settlement Agreement states ████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████

24.     Section I.D of the DOL Settlement Agreement states:

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

25.     AXIS is informed and believes, and thereon alleges, that no earlier than

December 2016, National Union and Continental Casualty collectively paid

████████ from their respective Limits of Liability of the National Union Primary

Policy and the Continental Excess Policy towards the settlement of the DOL

Investigation.

26.     The ██████ collectively paid by National Union and Continental

Casualty towards the settlement of the DOL Investigation was not for covered loss

because (1) ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████ and (2) ████████████████████████████

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

Case No.

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND
DAMAGES

1 ██████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████

4      27.    On December 27, 2016, shortly after having been provided with a copy

5 of the DOL Settlement Agreement, AXIS advised NORTHROP that coverage was

6 unavailable for the ██████ settlement funded collectively by National Union and

7 Continental Casualty.

8      28.    AXIS further advised NORTHROP on December 27, 2016, that it

9 understood that the Underlying Insurers have or would pay the ██████

10 settlement, and, to the extent that they did so, AXIS would not recognize erosion of

11 the Underlying Insurance.  AXIS also fully reserved all rights under the AXIS

12 Excess Policy.

13      29.    The collective payment of ██████ by National Union and

14 Continental Casualty towards the settlement of the DOL Investigation was not for

15 covered loss and therefore resulted in improper erosion of the Limits of Liability of

16 the National Union Primary Policy and Continental Excess Policy.  As a result, the

17 attachment point under the AXIS Excess Policy was improperly reduced by the sum

18 of ██████ potentially requiring AXIS to "drop down" by that amount.

19 **B.**    **The Settlement of the *Grabek* Action**

20      30.    On June 6 and 7, 2017, the parties to the *Grabek* Action executed a

21 Class Action Settlement Agreement which provides that the NORTHROP will pay

22 $16,750,000 in settlement of the *Grabek* Action (the "*Grabek* Settlement").

23      31.    AXIS is informed and believes, and thereon alleges, that Continental

24 Casualty has paid $ 7,043,762.08 of the Limits of Liability of the Continental

25 Excess Policy to fund a portion of the *Grabek* Settlement.

26      32.    On or about November 30, 2017, AXIS paid $9,706,237.92 of the

27 Limits of Liability of the AXIS Excess Policy to fund the remaining portion of the

28

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND
DAMAGES

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

1  *Grabek* Settlement pursuant to a full reservation of its rights, including the right to

2  seek reimbursement.

3       33.    Because of the improper erosion of the Limits of Liability of the

4  National Union Primary Policy and Continental Excess Policy, AXIS was required

5  to drop down to fund its portion of the *Grabek* Settlement, in contravention of

6  Section V.C of the AXIS Excess Policy.  Consequently, in paying the $9,706,237.92

7  to fund the remaining portion of the *Grabek* Settlement, AXIS paid ▮▮▮▮▮▮▮

8  more than it should have paid because National Union and Continental Casualty

9  funded the full amount of the uncovered DOL Settlement, thereby improperly

10  eroding the Underlying Insurance.  Had National Union and Continental Casualty

11  not funded the uncovered DOL Settlement, NORTHROP would have been required

12  to fund that settlement and, as a result, has been unjustly enriched in the amount of

13  ▮▮▮▮▮▮

14       **FIRST CAUSE OF ACTION**

15       **(Declaratory Relief)**

16       34.    AXIS incorporates and re-alleges Paragraphs 1 through 33 above as

17  though fully set forth herein.

18       35.    AXIS has complied with all of its obligations and duties under the

19  AXIS Excess Policy, except those duties which have been excused by the breach or

20  non-performance of NORTHROP.

21       36.    An actual controversy exists between AXIS, on the one hand, and

22  NORTHROP, on the other hand, relating to their respective rights and obligations

23  under the AXIS Excess Policy.

24       37.    AXIS contends that the funding of the DOL Settlement by National

25  Union and Continental Casualty was not for covered loss because (1) ▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮ constitutes an amount which is uninsurable under California law as

28  declared by the California Supreme Court in *Bank of the West v. Superior Court*, 2

Cal. 4th 1254 (2002), and (2) ██████████████████████████████████ ██████████████████████████████████ does not constitute covered loss within the meaning of the National Union Primary Policy.  AXIS further contends that the insurance afforded by the AXIS Excess Policy does not apply with respect to the payment of ███████ of the $9,706,237.92 which AXIS has contributed towards the settlement of the *Grabek* Action, as National Union and Continental Casualty paid this sum for uncovered loss.

38.   NORTHROP disputes these contentions.

39.   A declaratory judgment is necessary to determine the rights and obligations of the parties to the AXIS Excess Policy.

## SECOND CAUSE OF ACTION

### (Reimbursement of Indemnity)

40.   AXIS incorporates and re-alleges Paragraphs 1 through 39 above as though fully set forth herein.

41.   AXIS paid $9,706,237.92 towards the *Grabek* Settlement, pursuant to a reservation of rights, including the right to seek reimbursement of any and all amounts paid that are not properly owed by AXIS under the AXIS Excess Policy.

42.   Because the underlying National Union Primary Policy and Continental Excess Policy were wrongfully depleted in the amount of ██████ for payment of uncovered loss and uninsurable amounts in connection with the settlement of the DOL Investigation, causing AXIS to "drop down" by ██████ and unjustly enriching NORTHROP by that same amount, AXIS is entitled to reimbursement from NORTHROP of the sum of ██████ paid by AXIS towards the *Grabek* Settlement.

## THIRD CAUSE OF ACTION

### (Money Had and Received)

43.   AXIS incorporates and re-alleges Paragraphs 1 through 42 above as though fully set forth herein.

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

3070458

Case No.

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND DAMAGES

44.     As indemnification for the *Grabek* Settlement, AXIS paid $9,706,237.92 to NORTHROP via a qualified settlement fund created by NORTHROP.

45.     NORTHROP was not entitled to ▮▮▮▮ of the $9,706,237.92 it received from AXIS.

46.     NORTHROP demanded that AXIS fund the amount of $9,706,237.92 toward the *Grabek* Settlement and has not reimbursed the sum of ▮▮▮▮ to AXIS.

## PRAYER

Wherefore, Plaintiff AXIS prays for the following relief:

A.     A judicial declaration that (1) the sum of ▮▮▮▮ paid in settlement of the DOL Investigation by National Union under the National Union Primary Policy and Continental Casualty under the Continental Excess Policy was for uncovered loss and uninsurable amounts which wrongfully depleted the limits of the National Union Primary Policy and Continental Excess Policy, and (2) that the AXIS Excess Policy does not apply to the extent of such payment;

B.     For reimbursement of the sum of ▮▮▮▮ of the $9,706,237.92 paid by AXIS towards the *Grabek* Settlement;

C.     Costs;

D.     Prejudgment interest; and

E.     All other relief as the Court may deem just and proper.

Dated: November 30, 2017          CLYDE & CO US LLP

By: _____

Kim W. West
Alec H. Boyd
Attorneys for Plaintiff
Axis Reinsurance Company

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

3070458

Case No.

COMPLAINT FOR DECLARATORY RELIEF (28. U.S.C. §2201 and 28 U.S.C §1332) AND DAMAGES

# EXHIBIT A

# **AIG** American International Companies®

## Employee Benefit Plan Fiduciary Liability Insurance

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Pennsylvania

☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Co. of Pittsburgh, Pa.
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

POLICY NUMBER: *672-80-19*        REPLACEMENT OF POLICY NUMBER: *493-18-70*

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE:EXCEPT AS SET FORTH IN ITEM 3(b) OF THE DECLARATIONS, THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE.  AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER HAS THE DUTY TO DEFEND;HOWEVER, THE INSURED MAY ELECT TO ASSUME THE DUTY TO DEFEND.  IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 3 OF THE POLICY.

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | NAMED SPONSOR: *NORTHROP GRUMMAN CORPORATION* | (herein **Named Sponsor**") |
| 1(a) | MAILING ADDRESS: *1840 CENTURY PARK EAST LOS ANGELES, CA 90067* | |
| 1(b) | SUBSIDIARY COVERAGE: | Any past, present or future **Subsidiary** of the **Named Sponsor** |
| 1(c) | PLAN COVERAGE: | Any past, present or future **Plan** |
| 2 | POLICY PERIOD:  From: *August 1, 2006*    To: *August 1, 2007* 12:01 A.M. standard time at the address stated in Item 1(a) of the Declarations. | |
| 3(a) | POLICY AGGREGATE LIMIT OF LIABILITY (herein "Limit of Liability") For all **Loss**, in the aggregate, under this policy including **Defense Costs** (other than **Defense Costs** (if any) set forth in Item 3(b) of the Declarations): *$15,000,000* | |

*7208034*

77893 (3/01)        COPY                    1

| ITEMS (Continued) | |
|---|---|
| 3(b) | ADDITIONAL LIMIT OF LIABILITY FOR DEFENSE COSTS: *$0* |
| 3(c) | SUBLIMIT OF LIABILITY FOR VOLUNTARY COMPLIANCE LOSS<br><br>For all **Voluntary Compliance Loss**, in the aggregate, ☐ See endorsement #<br>under this policy including **Defense Expenses**   ☒ No Coverage<br><br>This Sublimit of Liability shall be part of and not in addition to the **Policy Aggregate Limit of Liability** set forth in Item 3(a) of the Declarations. |
| 4 | RETENTION:   Not applicable to: (i) non-**Indemnifiable Loss** of a **Natural Person Insured** (ii) judgments and settlements (all Coverages); and (iii) **Voluntary Compliance Loss** |
| 4(a) | Defense Costs: *$2,500,000*<br>   ☐ None |
| 5 | CONTINUITY DATE: *August 1, 1985* |
| 6 | PREMIUM: *$615,800*<br><br>    *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $17,936 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*<br>    *A copy of the TRIA disclosure sent with the original quote is attached hereto.* |
| 7 | NAME AND ADDRESS OF INSURER (herein "Insurer"):<br>*National Union Fire Insurance Company of Pittsburgh, Pa.*<br>*175 Water Street*<br>*New York, NY 10038*<br><br>This policy is issued only by the insurance company indicated in this Item 7. |

*7208034*

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_
_____
SECRETARY

_(signature)_
_____
PRESIDENT

_(signature)_
_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE & DATE

_____
COUNTERSIGNED AT

AON RISK SVCS, INC. OF SO. CA.
707 WILSHIRE BLVD, STE 6000
LOS ANGELES, CA 90017

7208034

77893 (3/01)   COPY

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

## POLICYHOLDER DISCLOSURE STATEMENT
## UNDER
## TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life, (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *NORTHROP GRUMMAN CORPORATION*

Policy Number: *672-80-19*
Policy Period Effective Date From: *August 1, 2006*   To: *August 1, 2007*

81285 (1/03)

**AIG** American International Companies®

**Employee Benefit Plan Fiduciary Liability Insurance**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including any attachments and any materials incorporated therein which form a part of this policy, the **Insurer** agrees as follows:

1.  **INSURING AGREEMENTS**

    (a)  Solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** against an **Insured** for any actual or alleged **Wrongful Act** by any such **Insured** (or by any employee for whom such **Insured** is legally responsible).

    (b)  Solely with respect to **CAP Penalties** and **Delinquent Filer Penalties** assessed against an **Insured**, and **Voluntary Fiduciary Correction Loss** incurred by an **Insured**, during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** during the **Policy Period** or the **Discovery** Period (if applicable) or within thirty (30) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), and subject to the other terms, conditions and limitations of this policy, this policy shall:

    (i)  pay the **CAP Penalties** and **Delinquent Filer Penalties**; and
    (ii)  reimburse the **Voluntary Fiduciary Correction Loss**,

    of each and every **Insured**, collectively not to exceed the amount of the **Sublimit of Liability** set forth in Item 3(c) of the Declarations; provided that the **Insured** shall select a **Panel Counsel Firm** as provided in Clause 9 of the policy.

    The payment of any **Voluntary Compliance Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law, including in the event that a **Voluntary Compliance Loss** results in a **Claim**.

2.  **DEFENSE AGREEMENT**

    (a)  **INSURER'S DUTY TO DEFEND**

    Except as hereinafter stated, the **Insurer** shall have both the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent.

    The **Insured** shall have the right to effectively associate with the **Insurer** in the defense of any **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause 2. The **Insurer** shall not, however, be obligated to defend any **Claim** after either: (1) the **Limit of Liability** and any additional **Defense Costs** (if any) indicated in Item 3(b) of the Declarations have been exhausted; or (2) after the rejection of a settlement offer, pursuant to the terms of subparagraph (c) of this Clause 2.

    (b)  **INSURED'S OPTION TO ASSUME DEFENSE**

    Notwithstanding the above, the **Insureds** shall have the right to assume the defense of any **Claim** made against them. This right shall be exercised in writing by the **Named Sponsor** on the behalf of all **Insureds** within sixty (60) days of the reporting of the **Claim** to the **Insurer** pursuant to Clause 8 of the policy. Upon receipt of such

written request, the **Insurer** shall tender the defense of the **Claim** to the **Insureds**. Once the defense has been so tendered, the **Insurer** cannot re–assume the defense of the **Claim**.   The **Insurer** shall have the right to effectively associate with the **Insureds** in the defense of any **Claim**, including but not limited to negotiating a settlement.  Provided that the **Insurer** shall be permitted to effectively associate with the **Insureds** in the defense of any **Claim**, including but not limited to negotiating a settlement of any **Claim**, the **Insurer's** consent to settlements, stipulated judgments and **Defense Costs** shall not be unreasonably withheld.

(c)   **GENERAL PROVISIONS (applicable to both (a) and (b) above)**

The **Insurer** shall advance **Defense Costs** prior to the final disposition of a **Claim**, subject to the other provisions of this policy.   Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

The **Insured(s)** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to in writing by the **Insurer** shall be recoverable as **Loss** under the terms of this policy.

The **Insured(s)** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require. The **Insurer** may make any settlement of any **Claim** it deems expedient with respect to any **Insured**, subject to such **Insured's** written consent.  If any **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the **Insurer** could have settled such **Claim**, plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer**. Further, in the event the **Insurer** is defending the **Claim** pursuant to Clause 2(a) above, then the **Insurer** shall tender the **Claim** to the **Insureds** who shall thereafter at their own expense and on their own behalf negotiate and defend such **Claim** independently of the **Insurer**.

Selection of counsel to defend the **Claim** made against the **Insureds** shall be governed by Clause 9 of the policy (if applicable).

3.   **DEFINITIONS**

"**Administrator**" means an **Insured** with respect to any **Wrongful Act** described in subparagraph (2) of the Definition of **Wrongful Act**.

"**Benefits**" means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

"**Breach of Fiduciary Duty**" means a violation of the responsibilities, obligations or duties imposed upon **Insureds** by ERISA.

"**Cafeteria Plan**" means a plan as defined in Section 125 of the Internal Revenue Code of 1986, as amended or a plan from which the participants may choose among two or more benefits consisting of cash and qualified benefits.

"**CAP Penalties**" means fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service (IRS) pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement to

correct such **Plan** defect was entered into in writing by the **Insured** with the IRS during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal).

"**Claim**" means:

(1) a written demand for monetary, non-monetary or injunctive relief; or
(2) a civil, criminal or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:
  (i) service of a complaint or similar pleading; or
  (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
  (iii) receipt or filing of a notice of charges; or
(3) a formal agency or regulatory adjudicative proceeding to which an **Insured** is subject; or
(4) any fact-finding investigation by the U.S. Department of Labor, the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States.

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

"**Consulting Fees**" means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with: (i) a **Plan** audit; or (ii) identifying, finding or assessing such **Breach of Fiduciary Duty**.

"**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to in writing by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, whether incurred under Clause 2(a), (b) or (c) of this policy, but excluding any compensation of **Natural Person Insureds** or employees of an **Insured**.

"**Defense Expenses**" means reasonable and necessary attorney's fees, costs or expenses consented to in writing by the **Insurer** resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Natural Person Insureds** or employees of an **Insured**.

"**Delinquent Filer Penalties**" means penalties assessed by the U.S. Department of Labor or the IRS under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal).

"**Dependent Care Assistance Program**" means a dependent care assistance program as defined in Section 129 of the Internal Revenue Code of 1986, as amended.

"**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Named Sponsor** or any **Subsidiary**.

"**Employee Benefit Law**" means ERISA or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world to which a **Plan** is subject. Except to the extent set forth in subparagraph (2) of the Definition of **Wrongful Act**, **Employee Benefit Law** shall not include any law concerning worker's compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

**"ERISA"** means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any amendment or revision thereto.

**"ESOP"** means any employee stock ownership plan as defined in **ERISA**, or any other **Plan** under which investments are made primarily in securities of the **Sponsor Organization** or whose assets at any time within twelve months prior to the inception date of this policy were comprised of 20% or more of securities of the **Sponsor Organization**.

**"Fiduciary"** means a fiduciary as defined in an **Employee Benefit Law** (if applicable), with respect to a **Plan**, or a person or entity who exercises discretionary control as respects the management of a **Plan** or the disposition of its assets.

**"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

**"Foreign Policy"** means the **Insurer's** or any other member company of American International Group, Inc.'s (AIG) standard fiduciary or pension trust liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction**, that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **Foreign Policy** means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term **Foreign Policy** shall not include any directors and officers, partnership, managerial, comprehensive general liability, employment practices, liability or professional liability coverage.

**"Fringe Benefit"** means any plan or benefit described in Section 132 of the Internal Revenue Code of 1986, as amended.

**"Indemnifiable Loss"** means **Loss** for which the **Sponsor Organization** has indemnified or is permitted or required to indemnify any natural person **Insured**.

**"Insured(s)"** means:

    (1) any **Natural Person Insured**;
    (2) any **Plan(s)**;
    (3) the **Sponsor Organization**; and
    (4) any other person or entity in his, her or its capacity as a **Fiduciary**, **Administrator** or trustee of a **Plan** and included in the Definition of **Insured** by specific written endorsement attached to this policy.

**"Loss"** means damages, judgments (including pre/post-judgment interest on a covered judgment), settlements and **Defense Costs**; however, **Loss** shall not include: (1) civil or criminal fines or penalties imposed by law, except (i) to the extent set forth in Item 3(c) of the Declarations page for **Voluntary Compliance Loss**, (ii) **UK Fines and Penalties**, (iii) the five percent or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**, and (iv) the 20 percent or less penalty imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to covered settlements or judgments; (2) the multiplied portion of multiplied damages; (3) taxes or tax penalties; (4) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (5) **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of a **Natural Person Insured**; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Where permitted by law, **Loss** shall include punitive or exemplary damages imposed upon any **Insured** (subject to the policy s other terms, conditions and exclusions, including but not limited to exclusions relating to profit, deliberate fraud or criminal acts and knowing or willful violation of any statute, rule or law, including but not limited to **Employee Benefit Law**).

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (1)–(6) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall include **Voluntary Compliance Loss.**

"**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; the general partners of a limited partnership; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Named Sponsor**, to elect, appoint or designate a majority of the Board of Directors of a corporation, the management committee of a joint venture, the general partners of a limited partnership, or the management board of a limited liability company.

"**Natural Person Insured**" means any:

  (1)   past, present or future natural person director, officer, governor, general partner, management committee member, member of the board of managers or employee of a **Sponsor Organization** or if applicable, of a **Plan**, and as to all of the above in his or her capacity as a **Fiduciary, Administrator** or trustee of a **Plan**; or

  (2)   past, present or future natural person in a position equivalent to a position listed in subparagraph (1) of this Definition in the event that the **Sponsor Organization** is operating in a **Foreign Jurisdiction**.

"**Non-qualified Plan**" means any of the following plans for a select group of management or highly compensated directors, officers and/or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan, or excess benefit plan.

"**Pension Plan**" means a pension plan as defined in any **Employee Benefit Law**.

"**Plan**" means automatically, any qualified plan, fund, trust or program (including, but not limited to, any **Pension Plan, Welfare Plan, Cafeteria Plan, Dependent Care Assistance Program, Fringe Benefit**, and **VEBA**) or **Non-qualified Plan**, established anywhere in the world, which was, is or shall be sponsored solely by the **Sponsor Organization**, or sponsored jointly by the **Sponsor Organization** and a labor organization, solely for the benefit of the employees and/or the directors, officers, governors, management committee members, members of the board of managers or natural person general partners of the **Sponsor Organization**, subject to the following provisions:

  (1)   if such **Plan** is a **Pension Plan(s)**, other than an **ESOP**, stock option plan or **Pension Plan** described in subparagraphs (5)(a) and 5(b) below, then the **Named Sponsor** shall provide written notice of such **Plan** to the **Insurer** prior to the inception date of this policy, unless such **Plan** was already covered under a policy issued by the **Insurer** of which this policy is a continuous renewal;

  (2)   if such **Plan** was sold, spun-off or terminated prior to the inception date of this policy the **Named Sponsor** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the inception date of this policy, unless such sale, spin-off or termination had already been reported to the **Insurer** under a policy issued by the **Insurer** of which this policy is a continuous renewal;

(3) if such **Plan** is sold, spun-off or terminated during the **Policy Period**, the **Named Sponsor** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the end of the **Policy Period**;

(4) if such **Plan** is an **ESOP** or stock option plan, the **Named Sponsor** shall provide written notice of such **Plan** to the **Insurer** unless such **Plan** was already covered under a policy issued by the **Insurer** of which this policy is a continuous renewal and such **Plan** is added to the Definition of **Plan** by specific written endorsement attached to this policy; or

(5) if such **Plan** is a **Pension Plan** (other than an **ESOP**, or stock option plan) and:

    (a) is acquired during the **Policy Period** as a result of the **Sponsor Organization's** acquisition of a **Subsidiary** whose assets total more than 25% of the total consolidated assets of the **Sponsor Organization** as of the inception date of this policy; or

    (b) is acquired during the **Policy Period** and such **Plan's** assets total more than 25% of the total consolidated assets of all covered **Pension Plans** as of the inception date of this policy,

then, this policy shall apply to such **Plan** (but solely with respect to a **Wrongful Act(s)** occurring after the date of such acquisition), but only upon the condition that within 90 days of its acquisition, the **Named Sponsor** shall have provided the **Insurer** with a completed application for such new **Plan** and agreed to any additional premium or amendment of the provisions of the policy required by the **Insurer** relating to such new **Plan**. The 90 day reporting condition shall not apply if such new **Plan** does not constitute one of the five largest **Pension Plans** of the **Sponsor Organization** and the failure to report such **Plan** within the 90 day reporting period was due to inadvertent omission by the **Named Sponsor** and upon discovery of such **Plan**, the **Named Sponsor** shall notify the **Insurer** as soon as practicable, provide any information required by the **Insurer** relating to such **Plan** and pay any premium required by the **Insurer** relating to such **Plan**.

The Definition of **Plan** shall also include: (i) the following government-mandated programs: unemployment insurance, Social Security, or disability benefits, but solely with respect to a **Wrongful Act** defined in subparagraph (2) of the Definition of **Wrongful Act** in this policy; (ii) any **Pension Plan** (other than an **ESOP** or stock option plan) considered or created by the **Sponsor Organization** during the **Policy Period**; or (iii) any other plan, fund or program, which is included in the Definition of **Plan** by specific written endorsement attached to this policy.

In no event, however, shall the Definition of **Plan** include any multiemployer plan as defined in **Employee Benefit Law**.

"**Policy Period**" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

"**Pollutants**" include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.

"**Sponsor Organization**" means the **Named Sponsor** designated in Item 1 of the Declarations and any **Subsidiary** thereof; and, in the event any bankruptcy proceeding shall be instituted by or against the **Named Sponsor** or any **Subsidiary** thereof, the resulting debtor in possession (or equivalent status outside the United States), if any.

"**Subsidiary**" means any past, present or future: (1) for-profit entity of which the **Named Sponsor** has **Management Control** either directly or indirectly through one or more other **Subsidiaries**; and (2) not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by the **Named Sponsor**. The term **Subsidiary** shall automatically apply to any new **Subsidiary** acquired or created during the **Policy Period**.

A for-profit entity ceases to be a **Subsidiary** when the **Named Sponsor** no longer maintains **Management Control** of such **Subsidiary**. A not-for-profit entity ceases to be a **Subsidiary** when the **Named Sponsor** no longer exclusively sponsors such **Subsidiary**.

"**UK Fines and Penalties**" means civil fines and penalties assessed against an **Insured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom or by the Occupational Pensions Regulatory Authority in the United Kingdom or any successor body thereto, subject to the other terms, conditions and exclusions of the policy.

"**VEBA**" means a voluntary employees beneficiary association as defined in Section 501(c)(9) of the Internal Revenue Code of 1986, as amended and the regulations thereunder, the purpose of which is to provide for life, sickness, accident or other benefits and that is funded solely by the **Sponsor Organization**, and provides benefits for voluntary members who are employees or former employees of the **Sponsor Organization** and/or their beneficiaries.

"**Voluntary Compliance Loss**" means **CAP Penalties**, **Delinquent Filer Penalties** and **Voluntary Fiduciary Correction Loss**.

"**Voluntary Fiduciary Correction Loss**" means damages, **Defense Expenses** and **Consulting Fees** incurred in connection with the U.S. Department of Labor's ("**DOL**") Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent **Breach of Fiduciary Duty** occurring during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this policy is a continuous renewal), provided that such compliance with the **DOL'S** Voluntary Fiduciary Correction Program results in the **Insured** obtaining a "No Action" letter from the DOL; however, **Voluntary Fiduciary Correction Loss** shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes or tax penalties; (5) any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**; (6) **Benefits**, or that portion of damages equal to such **Benefits**; (7) matters of which the **Insured** had knowledge prior to the inception date of this policy or the first policy issued by the **Insurer** to the **Named Sponsor** of which this policy is a continuous renewal; or (8) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

"**Welfare Plan**" means a welfare plan as defined in **Employee Benefit Law**.

"**Wrongful Act**" means:

(1)   as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, the **Plan** or the **Sponsor Organization**, but only with respect to a **Plan**; and

(2)   as respects an **Administrator**, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:
   (i)   counseling employees, participants and beneficiaries; or
   (ii)  providing interpretations; or
   (iii) handling of records; or
   (iv)  activities affecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**,
   or any matter claimed against an **Insured** solely by reason of his, her or its status as an **Administrator**, the **Plan** or the **Sponsor Organization**, but only with respect to a **Plan**;

(3)   as respects a **Natural Person Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or **Administrator** of    any

multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Sponsor Organization** and such multiemployer plan is added by specific written endorsement attached to this policy, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this policy extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than a **Natural Person Insured**.

4.   **WORLDWIDE EXTENSION**

Where legally permissible, this policy shall apply to a **Claim** made against any **Insured** anywhere in the world.

With regard to a **Claim(s)** brought and maintained solely in a **Foreign Jurisdiction** against an **Insured** formed and operating in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1, 3–5, 9–13, and 16–19 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non–renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Sponsor**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

5.   **EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured(s)**:

(a)   arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an **Insured** was not legally entitled;

(b)   arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law**;

   [The **Wrongful Act** of any **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusions 5(a) and 5(b).]

(c)   for discrimination in violation of any law, except that this exclusion shall not apply to discrimination in violation of **Employee Benefit Law**;

(d)   alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act** alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)   alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)   for failure to fund a **Plan** in accordance with **Employee Benefit Law** or the **Plan** instrument, or the failure to collect contributions owed to the **Plan**; except that this exclusion shall not apply to **Defense Costs**;

(g)   alleging, arising out of, based upon or attributable to any act or omission in his, her or its capacity as a Fiduciary or Administrator of any plan, fund or program, other than a **Plan** as defined in this policy, or by reason of his, her or its status as a Fiduciary or Administrator of such other plan, fund or program;

(h)   for bodily injury, sickness, disease, or death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof; except that this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**;

(i)   alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when the **Sponsor Organization** did not sponsor such **Plan** or when the **Natural Person Insured** was not a **Fiduciary**, **Administrator**, trustee, director, officer, governor, management committee member, member of the board of managers, general partner or employee of the **Sponsor Organization** or if applicable, a **Plan**;

(j)   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly: (1) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, that this exclusion shall not apply to non-**Indemnifiable Loss** arising from a **Claim** alleging damage to a **Plan**, other than non-**Indemnifiable Loss** constituting **Cleanup Costs**;

**6.    LIMIT OF LIABILITY   (FOR ALL LOSS – INCLUDING DEFENSE COSTS)**

The **Limit of Liability** stated in Item 3(a) of the Declarations is the limit of the **Insurer's** liability for all **Loss**, including **Defense Costs**, under this policy arising out of all **Claims** first made against the **Insured** during the **Policy Period** or the **Discovery Period** (if applicable). The **Limit of Liability** stated in Item 3(b) of the Declarations, if any, shall be an additional **Limit of Liability** for that part of **Loss** constituting **Defense Costs** incurred in connection with all **Claims** first made against the **Insured** during the **Policy Period** or the **Discovery Period** (if applicable). The **Limit of Liability** for **Defense Costs** stated in Item 3(b) shall be in addition to and not part of the **Limit of Liability** stated in Item 3(a) of the Declarations.  **Loss** constituting **Defense Costs** shall first reduce the additional **Limit of Liability** stated in Item 3(b). Should the **Limit of Liability** stated in Item 3(b) of the Declarations become exhausted, or should the **Limit of Liability** stated in Item 3(b) of the Declarations be stated as "none", then subsequent **Defense Costs** will reduce the **Limit of Liability** stated in Item 3(a).

The **Sublimit of Liability** set forth in Item 3(c) of the Declarations shall be part of and not in addition to the **Limit of Liability** set forth in Item 3(a).

The **Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**.  Further, any **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable), which pursuant to Clause 8(b) or 8(c) is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the aggregate Limit(s) of Liability stated in Item 3 of the Declarations.

**Defense Costs**, whether incurred under Clause 2(a), (b) or (c) of this policy, are not payable by the **Insurer** in addition to the **Limit of Liability**; except that the separate limit, if any, listed in Item 3(b) of the Declarations shall be in addition to the aggregate **Limit of Liability** stated in Item 3(a) of the Declarations.  **Defense Costs** are part of **Loss** and as such are subject to the **Limit of Liability** for **Loss**.

7.   **RETENTION CLAUSE**

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the Retention amount stated in Item 4 of the Declarations, such Retention amount to be borne by the **Insured** and shall remain uninsured, with regard to all **Defense Costs** other than: (1) non-**Indemnifiable Loss** of a **Natural Person Insured**; and (2) **Voluntary Compliance Loss**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

8.   **NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to the Insurer named in Item 7 of the Declarations at the address indicated in Item 7 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.**

(a)   The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** as soon as practicable after the **Named Sponsor's** risk manager' or general counsel (or if no such position exists, then such equivalent position) first becomes aware of the **Claim**, but in all events no later than either:

 (1)   the end of the **Policy Period** or during the **Discovery Period** (if applicable); or

 (2)   within thirty (30) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final thirty (30) days of the **Policy Period** or the **Discovery Period** (if applicable).

(b)   If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 8(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c)   If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Sponsor Organization** or an **Insured(s)** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

9.   **PRE–AUTHORIZED DEFENSE ATTORNEYS**

This Clause 9 applies only to: (1) a **Claim** brought by any government entity; (2) a request for coverage for a **Voluntary Compliance Loss**; or (3) a **Claim** brought in the form of a class or representative action.

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firm(s)**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim** against an **Insured** to which this Clause 9 applies and pursuant to the terms set forth below:

In the event the **Insurer** is operating under a duty to defend pursuant to Clause 2(a) of this policy, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. Upon the written request of the **Named Sponsor**, the **Insurer** may consent to a different **Panel Counsel Firm** selected by the **Named Sponsor** to defend the **Insureds**, which consent shall not be unreasonably withheld.

In the event the **Insureds** have assumed the defense of the **Claim** pursuant to Clause 2(b) of the policy, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insured**. In addition, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, the **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The selection of a **Panel Counsel Firm** from the attached list to defend the **Claim** against the **Insureds** shall not be restricted to the jurisdiction in which the **Claim** is brought.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Named Sponsor**. At the request of the **Named Sponsor**, the **Insurer** may in its discretion add one or more law firms to the attached list of **Panel Counsel Firms** for the purposes of defending the **Claim** made against the **Insureds**. The list of **Panel Counsel Firms** may also be amended to add, at the sole discretion of the **Insurer**, a non–**Panel Counsel Firm** for the purpose of acting as "local counsel" to assist an existing **Panel Counsel Firm**, which **Panel Counsel Firm** will act as "lead counsel" in conducting the defense of the **Claim**, for **Claims** brought in a jurisdiction in which the chosen **Panel Counsel Firm** does not maintain an office.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the **Named Sponsor** shall cancel or the **Named Sponsor** or the **Insurer** shall refuse to renew this policy, the **Named Sponsor** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal ("**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clauses 8(a) and 8(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which the **Natural Person Insured** or an **Insured** shall become aware, in either case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 6, if the **Named Sponsor** shall cancel or the **Insurer** or the **Named Sponsor** shall refuse to renew this policy, then the **Named Sponsor** shall also have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction**, as defined in Clause 12(a), the **Named Sponsor** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

~~The Discovery Period is not cancelable and the additional premium charged shall be fully~~ earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period,** together with any additional premium due, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

11. **CANCELLATION CLAUSE**

This policy may be canceled by the **Named Sponsor** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Sponsor**. In the event of non-payment of premium by the **Named Sponsor**, the **Insurer** may cancel this policy by delivering to the **Named Sponsor** or by mailing to the **Named Sponsor**, by registered, certified, or other first class mail, at the **Named Sponsor**'s address as shown in Item 1 of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Sponsor**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

12. **ORGANIZATIONAL CHANGES**

(a) If during the **Policy Period**:

    (1) the **Named Sponsor** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Sponsor**;

(any of such events being a "**Transaction**"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Sponsor** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause 10 of this policy.

(b) *Other Organizational Changes:* In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Sponsor Organization** and/or any **Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Sponsor Organization** became a **Sponsor Organization** and such **Insured** became an **Insured**, and prior to the effective time that such **Sponsor Organization** ceases to be a **Sponsor Organization** or such **Insured** ceases to be an **Insured**.

With regard to any **Plan** that was sold, spun-off or terminated either prior to the inception date of this policy or during the **Policy Period**, this policy shall apply but solely with respect to a **Wrongful Act(s)** that occurred prior to the date of such sale or spin-off, or prior to the date that the **Sponsor Organization** or **Natural Person Insured** ceases to be a **Fiduciary** or **Administrator** of, a sold or spun-off **Plan**, or in the case of a terminated **Plan**, prior to the final date of asset distribution of such **Plan**, provided that notice of such sale, spin-off or termination is provided to the **Insurer** before the end of the **Policy Period**.

## 13. SUBROGATION AND WAIVER OF RECOURSE

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of the **Insureds**. In no event shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a criminal act, or been determined to have in fact committed a deliberate fraudulent act or knowingly or willingly violated any statute, rule or law (including but not limited to **Employee Benefit Law**), or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

In the event this policy has been purchased by an **Insured** other than a **Plan**, the **Insurer** shall have no right of recourse against an **Insured**. Notwithstanding the foregoing, the **Insurer** shall have a right of recourse against an **Insured** arising out of a **Claim** by an **Insured** against another **Insured** unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the **Insured** claimed against.

It is further provided that in the event of any recovery under this Clause 13, the **Limit of Liability** of this policy shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

## 14. OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

## 15. NOTICE AND AUTHORITY

It is agreed that the **Named Sponsor** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right under Clause 2(b) or Clause 10 of this policy.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 17. ACTION AGAINST INSURER

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured** or his or her spouse or **Domestic Partner** or his, her or its legal representatives. Bankruptcy or insolvency of any **Insured** or of his, her or its estate shall not relieve the **Insurer** of any of its obligations hereunder.

## 18. SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against a **Natural Person Insured** includes a **Claim** against: (i) the lawful spouse **or Domestic Partner** of such **Natural Person Insured**; or (ii) a property interest of such spouse or **Domestic Partner**, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Natural Person Insured**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or **Domestic Partner** or the property of that spouse or **Domestic Partner** to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or **Domestic Partner**. This policy shall cover **Loss** arising from a **Claim** made against the estate, heirs, or legal representatives of any deceased **Natural Person Insured**, and the legal representatives of any **Natural Person Insured**, in the event of incompetency, insolvency or bankruptcy, who was a **Natural Person Insured** at the time the **Wrongful Act(s)** upon which the **Claim** is based was committed.

## 19. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**APPENDIX A**
**EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY**
**PANEL COUNSEL LIST**

**ARIZONA**

**Snell & Wilmer, LLP**
*Thomas R. Hoecker (602)382-6361*
One Arizona Center, Phoenix, AZ 85004-2202 (602)382-6000

**CALIFORNIA**

**DLA Piper Rudnick Gray Cary US, LLP**
*Charles L. Deem (619)699-2978*
4365 Executive Drive, Suite 1100, San Diego, CA 92121-2133 (619)699-2978

**Greenberg Traurig, LLP**
*Brian S. Cousin (310)586-7711*
2450 Colorado Avenue, Suite 400, East, Santa Monica, CA 90404 (310)586-7700

**Jackson Lewis, LLP**
*\*Michael D. Jacobster (914)514-6132*
725 South Figueroa Street, Suite 2500, Los Angeles, CA 90017 (213)689-0404

*\*Michael D. Jacobster (914)514-6132*
199 Fremont Street, 10th Floor, San Francisco, CA 94105 (415)394-9400

**Pillsbury Winthrop Shaw Pittman, LLP**
*Kirke M. Hasson (415)983-1077*
50 Fremont Street, San Francisco, CA 94105 (415)983-1000

**DISTRICT OF COLUMBIA**

**Arent Fox, PLLC**
*Carol Connor Flowe*
1050 Connecticut Avenue, NW, Washington, DC 20036-5339 (202)857-6000

**Arnold & Porter**
*Scott B. Schreiber (202)942-5672 / Andrew T. Karron (202)942-5335 / David P. Gersch (202)942-5125*
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000

**DLA Piper Rudnick Gray Cary US, LLP**
*Charles B. Wayne (202)861-3900*
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900

**Gibson, Dunn & Crutcher, LLP**
*William J. Kilberg (202)955-8573 / Baruch A. Fellner (202)955-8591 / Peter H. Turza (202)955-8579*
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500

**Groom Law Group Chartered**
*Christopher Rillo (202)861-5418*
1701 Pennsylvania Avenue, NW, Suite 1200, Washington, DC 20006 (202)857-0620

Revised (6/06)                          Page 1

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
### PANEL COUNSEL LIST

**Kilpatrick Stockton, LLP**
*Steven J. Sacher (202)508-5800*
607 14th Street, NW, Suite 900, Washington, DC 20005-2018 (202)508-5846

**O'Melveny & Myers, LLP**
*Robert N. Eccles (202)383-5363*
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300

**Patton Boggs, LLP**
*Michael A. Curto / Eric A. Kuwana*
2550 M Street, N.W., Washington, DC 20037 (202)457-6000

**Steptoe & Johnson, LLP**
*Paul J. Ondrasik, Jr. (202)429-8088 / Edward R. Mackiewicz (202)429-6412*
1330 Connecticut Ave., NW, Washington, DC 20036 (202)429-3000

**FLORIDA**

**Greenberg Traurig, LLP**
*Joseph Z. Fleming (305)579-0500 / Steven B. Lapidus (305)579-0500*
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500

**GEORGIA**

**Alston & Bird, LLP**
*Gregory C. Braden (404)881-7947 / H. Douglas Hinson (404)881-7590*
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000

**Jackson Lewis, LLP**
*\*Michael D. Jacobster (914)514-6132*
1900 Marquis One Tower, NE, 245 Peachtree Center Ave., NE, Atlanta, GA 30303 (404)525-8200

**King & Spalding**
*Eleanor Banister (404)572-4930 / Susan Canter Reisner (404)572-4650 / William A. Clineburg (404)572-4701 / Donald S. Kohla (404)572-4926*
1188 Peachtree Street, Atlanta, GA 30309 (404)572-4600

**ILLINOIS**

**Baker & McKenzie**
*Michael A. Pollard (312)861-2786*
130 East Randolph Drive, Chicago, IL 60601 (312)861-8000

**DLA Piper Rudnick Gray Cary US, LLP**
*Ian S. Kopelman (312)368-2161*
203 North LaSalle Street, Suite 1800, Chicago, IL 60601-1293 (312)368-4000

**Greenberg Traurig, LLP**
*Brian S. Cousin (312)456-8420*
77 West Wacker, Suite 2500, Chicago, IL 60601 (312)456-8400

Revised (6/06)                          Page 2

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
320 West Ohio Street, Suite 500, Chicago, IL 60610 (312)787-4949

**Mayer, Brown Rowe & Maw**
*William A. Gordon / James D. Holzhauer (312)701-7078*
190 S. LaSalle St., Chicago, IL 60603-3441 (312)782-0600

**Seyfarth Shaw, LLP**
*Thomas J. Piskorski (312)269-8925 / John T. Murray (404)888-1020*
55 East Monroe, Suite 4200, Chicago, IL 60603 (312)346-8000

**Vedder Price Kaufman & Kammholz**
*Charles B. Wolf (312)609-7888 / Thomas G. Hancuch (312)609-7824*
222 North LaSalle Street, Chicago, IL 60601 (312)609-7500

**MAINE**

**MMMB Group**
*Stephan G. Bachelder*
22 Free Street, Suite 201, PO Box 17594, Portland, ME 04112-8594 (207)761-8100

**Pierce Atwood**
*William J. Kayatta, Jr. (207)791-1238*
One Monument Square, Portland, ME 04101 (207)791-1100

**MARYLAND**

**DLA Piper Rudnick Gray Cary US, LLP**
*Robert J. Mathias (410)580-4209 / Mark Muedeking (202)861-6258 / John R. Wellschlager (410)580-4281*
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000

**MASSACHUSETTS**

**Jackson Lewis, LLP**
*Michael D. Jacobster (914)514-6132*
75 Park Plaza, 4th Floor, Boston, MA 02116 (617)367-0025

**Peabody & Arnold, LLP**
*Robert T. Gill (617)951-4706*
30 Rowes Wharf, Boston, MA 02110 (617)951-2100

**WilmerHale**
*Neil Jacobs (617)526-6970*
60 State Street, Boston, MA 02109 (617)526-6000

Revised (6/06)                     Page 3

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

**APPENDIX A**
**EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY**
**PANEL COUNSEL LIST**


**MICHIGAN**

**Miller, Canfield, Paddock and Stone, PLC**
*Charles S. Mishkind (Co-Chair of Group) (616)776-6307*
99 Monroe Avenue, NW, Suite 1200, Grand Rapids, MI 49503 (616)454-8656

**MINNESOTA**

**Dorsey & Whitney, LLP**
*Stephen P. Lucke (612)343-7947 / Timothy E. Branson (612)343-7920*
50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498 (612)340-2600

**Faegre & Benson, LLP**
*Hubert V. Forcier (612)766-7417 / Paul W. Heiring (612)766-8316 / Steven L. Severson (612)766-7310*
2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901
(612)766-7000

**NEW JERSEY**

**Dechert, LLP**
*Matthew V. DelDuca (609)620-3202*
Princeton Pike Corporate, Center, P.O. Box 5218, Princeton, NJ 08543-5218 (609)620-3200

**Greenberg Traurig, LLP**
*Brian S. Cousin (212)801-9200*
200 Campus Drive, P.O. Box 677, Florham Park, NJ 07932-0677 (973)360-7900

**NEW YORK**

**DLA Piper Rudnick Gray Cary US, LLP**
*David E. Nachman (212)835-6074*
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000

**Greenberg Traurig, LLP**
*Brian S. Cousin (212)801-9200*
MetLife Building, 200 Park Avenue, New York, NY 10166 (212)801-9200

**Jackson Lewis, LLP**
*\*Michael D. Jacobster (914)514-6132*
59 Maiden Lane, 39th Floor, New York, NY 10038 (212)545-4000

*\*Michael D. Jacobster (914)514-6132*
One North Broadway, 15th Floor, White Plains, NY 10601 (914)328-0404

**Kramer Levin Naftalis & Frankel, LLP**
*Michael J. Dell (212)715-9129*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100


Revised (6/06)                              Page 4

COPY

## APPENDIX A
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY
## PANEL COUNSEL LIST

**Pillsbury Winthrop Shaw Pittman, LLP**
*Frederick A. Brodie (212)858-1628 / Peter J. Hunt (212)858-1139 / Richard H. Block (212)858-1626 / Susan P. Serota (212)858-1125*
1540 Broadway, New York, NY 10036 (212)858-1000

**NORTH CAROLINA**

**Poyner & Spruill, LLP**
*Susanna K. Gibbons (919)783-2813*
3600 Glenwood Avenue, (27612), P.O. Box 10096, Raleigh, NC 27605-0096 (919)783-6400

**PENNSYLVANIA**

**Dechert, LLP**
*Matthew Lee Wiener (215)994-2976*
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000

**Jackson Lewis, LLP**
*\*Michael D. Jacobster (914)514-6132*
One PPG Place, 28th Floor, Pittsburgh, PA 15222 (412)232-0404

**Morgan, Lewis & Bockius, LLP**
*Brian T. Ortelere (215)963-5150*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000

**Pepper Hamilton, LLP**
*Susan Katz Hoffman (215)981-4990 / Laurence Z. Shiekman (215)981-4347 / Kay Kyungsun Yu (215)981-4188 / Larry R. Wood, Jr. (215)981-4103*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799 (215)981-4000

**SOUTH CAROLINA**

**Ogletree, Deakins, Nash, Smoak & Stewart, PC**
*Thomas M. Christina*
918 S. Pleasantbury Drive, Greenville, SC 29607-2424 (864)271-7410

**TEXAS**

**Fulbright & Jaworski, LLP**
*A.J. Harper (713)651-5442*
1301 McKinney, Suite 5100, Houston, TX 77010 (713)651-5151

**Jackson Lewis, LLP**
*\*Michael D. Jacobster (914)514-6132*
3811 Turtle Creek Blvd., Suite 500, Dallas, TX 75219 (214)520-2400

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

APPENDIX A
**EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY**
**PANEL COUNSEL LIST**

**VIRGINIA**

**Jackson Lewis, LLP**
8614 Westwood Center Drive, Suite 950, Vienna, VA 22182 (703)821-2189
*Michael D. Jacobster (914)514-6132*

**WASHINGTON**

**Perkins Coie, LLP**
*Graham H. Fernald (206)359-8466*
1201 Third Avenue, Suite 4800, Seattle, WA 98101-3099 (206)359-8000

**WISCONSIN**

**Reinhart, Boerner, Van Deuren, SC**
*Jeffrey R. Fuller (414)298-8115*
1000 North Water Street, Suite 2100, Milwaukee, WI 53202-3400 (414)298-1000

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

**ENDORSEMENT# 1**

This endorsement, effective *12:01 am*    *August 1, 2006*        forms a part of
policy number   *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CALIFORNIA CANCELLATION/NONRENEWAL
## ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Entity, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is hereby understood and agreed that the Cancellation Clause is replaced with the following:

CANCELLATION CLAUSE

The First Named Insured shown in the Declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

1.  Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

2.  A judgement by a court or an administrative tribunal that the Named Insured has violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

3.  Discovery of fraud or material misrepresentation by either of the following:

    a.  The Insured or Other Insured(s) or his or her representative in obtaining the insurance; or

    b.  The Named Insured or his or her representative in pursuing a claim under the policy.

4.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named Insured or Other Insured(s) or a representative of same, which materially increase any of the risks insured against.

5.  Failure by the named Insured or Other Insured(s) or a representative of the same to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan if the failure materially increases any of the risks insured against.

*END 001*

## ENDORSEMENT# 1    (continued)

6.    A determination by the commissioner that the loss of, or changes in, an insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the insurer.

7.    A determination by the commissioner that a continuation of the policy coverage could place the insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the insurer.

8.    A change by the named insured or Other Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the Named Insured at least thirty (30) days prior to the effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

NONRENEWAL

If the insurer decides not to renew the policy, the insurer shall mail or deliver to the producer of record and the named insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

RENEWAL

If a policy has been in effect for more than sixty (60) days or if the policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by the Named Insured or Other Insured(s) which materially increase any of the risks or hazards insured against.

2.    Failure by the named insured or Other Insured(s) to implement reasonable loss control requirements which were agreed to by the insured as a condition of policy issuance or which were conditions precedent to the use by the insurer of a particular rate or rating plan, if the failure materially increases any of ·the risks insured against.

3.    A determination by the commissioner that loss of or changes in an insurer's reinsurance covering all or part of the risk covered by the policy would threaten the financial integrity or solvency of the insurer unless the change in the terms or conditions or rate upon which the premium is based is permitted.

4.    A change by the named insured or Other Insured(s) in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or materially changed risk, unless the added, increased, or changed risk is included in the policy.

*END 001*

<u>ENDORSEMENT# *1*</u>    (continued)

Written notice shall be mailed or delivered to the Named Insured and the producer of record at least thirty (30) days prior to the effective date of any increase, reduction or change.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 001*

**ENDORSEMENT# 2**

This endorsement, effective *12:01 am*    *August 1, 2006*    forms a part of
policy number   *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## 3/01 EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending the policy) is hereby amended as follows:

Clause 3. DEFINITIONS

1.   The definition of "**Employee Benefit Law**" is deleted in its entirety and replaced with the following:

    "**Employee Benefit Law**" means:

    (1)  **ERISA** or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world to which a **Plan** is subject.

    (2)  Solely with respect to paragraph (2) of the definition of **Wrongful Act**, **Employee Benefit Law** shall also include Part 164 of the regulations under the Health Insurance Portability and Accountability Act of 1996 (hereinafter "**HIPAA Privacy Regulations**"), unemployment insurance, Social Security, government-mandated disability benefits or similar law.

    (3)  In no event shall **Employee Benefit Law,** other than as set forth in paragraph (2) of this definition of **Employee Benefit Law**, include any law concerning worker's compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

2.   The definition of "**ERISA**" is deleted in its entirety and replaced with the following:

    "**ERISA**" means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, Health Insurance Portability and Accountability Act of 1996 as it relates to Sections 102(b) and 104(b)(1) of **ERISA**, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any amendment or revision thereto.

3.   The definition of "**ESOP**" is deleted in its entirety and replaced with the following:

    "**ESOP**" means any employee stock ownership plan as defined in **ERISA**, or any other **Plan** under which investments are made primarily in securities of or issued by (i) the **Sponsor Organization**, (ii) the parent of the **Sponsor Organization**, (iii) any acquired **Subsidiary**, or (iv) any parent of any acquired **Subsidiary**, or whose assets at any time within twelve months prior to the inception date of this policy were comprised of 10% or more of securities of the **Sponsor Organization**, the parent of the **Sponsor Organization**, any acquired **Subsidiary**, or any parent of any acquired **Subsidiary**.

*END 002*

**COPY**        Page 1 of 3

**ENDORSEMENT# 2**    (continued)

4.   The definition of "**Plan**" is amended by deleting paragraphs (2) and (4) in their entirety and replacing *them* with the following:

(2)   if such **Plan** was sold, spun-off or terminated prior to the inception date of this policy the **Named Sponsor** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the inception date of this policy and pay any required premium relating to such **Plan**, unless such sale, spin–off or termination had already been reported to the **Insurer** under a policy issued by the **Insurer** of which this policy is a continuous renewal;

(4)   if such **Plan** is an **ESOP** or stock option plan, the **Named Sponsor** shall provide written notice of such **Plan** to the **Insurer** and such **Plan** is added to the Definition of **Plan** by specific written endorsement attached to this policy; or

5.   The definition of "**Wrongful Act**" is deleted in its entirety and replaced with the following:

(1)   as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**; and

(2)   as respects an **Administrator**, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:
 (i)   counseling employees, participants and beneficiaries; or
 (ii)   providing interpretations; or
 (iii)   handling of records; or
 (iv)   activities effecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**,
or any matter claimed against an **Insured** solely by reason of his, her or its status as an **Administrator**, but only with respect to a **Plan**;

(3)   as respects a **Natural Person Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or **Administrator** of any multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Sponsor Organization** and such multiemployer plan is added by specific written endorsement attached to this policy, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this policy extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than a **Natural Person Insured**.

Clause 12. ORGANIZATIONAL CHANGES is amended by deleting paragraph (b) in its entirety and replacing it with the following:

(b)   *Other Organizational Changes*. In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Sponsor Organization** and/or any **Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Sponsor Organization** became a **Sponsor Organization** and such **Insured** became an **Insured**, and

ENDORSEMENT# *2*   (continued)

prior to the effective time that such **Sponsor Organization** ceases to be a **Sponsor Organization** or such **Insured** ceases to be an **Insured**.

With regard to any **Plan** that was sold, spun-off or terminated either prior to the inception date of this policy or during the **Policy Period**, this policy shall apply but solely with respect to a **Wrongful Act(s)** that occurred prior to the date of such sale or spin-off, or prior to the date that the **Sponsor Organization** or **Natural Person Insured** ceases to be a **Fiduciary** or **Administrator** of, a sold or spun-off **Plan**, or in the case of a terminated **Plan**, prior to the final date of asset distribution of such **Plan**, provided that in the event of a sale, spin-off or termination prior to the inception of this **Policy Period**, notice of such sale, spin-off or termination is provided to the **Insurer** *prior to the inception of this* **Policy Period** and any required premium is paid, or, in the event of a sale, spin-off termination during the Policy Period, notice of such sale, spin-off or termination is provided to the **Insurer** before the end of the **Policy Period**.

The following clause shall be added to the policy:

**20.   ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a)   first, pay **Loss** for which coverage is provided under this policy for any **Natural Person Insured** and any covered **Plan** under this policy; and

(b)   then, only after payment of **Loss** has been made pursuant to Clause 20(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, shall payment for the **Sponsor Organization** be made for such other **Loss** for which coverage is provided under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *3***

This endorsement, effective *12:01 am*    *August 1, 2006*        forms a part of
policy number    *672-80-19*
issued to    *NORTHROP GRUMMAN CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## AON AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

A.    ÝThis paragraph is left blank intentionally.¨

B.    **PUNITIVE, EXEMPLARY AND MULTIPLIED DAMAGES**

The definition of " **Loss**" in Clause 3. **DEFINITIONS** is amended by deleting the
second paragraph thereof and replacing it with the following:

**Loss** shall include punitive damages, exemplary damages and the multiplied portion
of multiplied damages imposed upon any **Insured** (subject to the policy's other
terms, conditions and exclusions, including but not limited to exclusions relating to
profit, deliberate fraud or criminal acts and knowing or willful violation of any
statute, rule or law, including but not limited to **Employee Benefit Law**).

It is further understood and agreed that the enforceability of this endorsement shall
be governed by such applicable law which most favors coverage for ·punitive,
damages, exemplary damages, or the multiplied portion of multiplied damages. For
purposes of the foregoing sentence, "applicable law" shall include, but not be
limited to, the following jurisdictions: (1) where the **Wrongful Act** giving rise to such
punitive, exemplary or multiple damages actually or allegedly occurred; (2) where
such punitive, exemplary or multiple damages were awarded; (3) where the **Insured
Person** subject to such punitive, exemplary or multiple damages resides, or where
an **Organization** that is subject to such punitive, exemplary or multiple damages is
incorporated or has its principal place of business; ·and (4) where the **Insurer** is
incorporated or has its principal place of business.

C.    **DEFINITION OF LOSS FURTHER AMENDED**

The definition of " **Loss**" in Clause 3. **DEFINITIONS** is further amended by adding the
following to the end thereof:

**HIPAA EXTENSION**

" **Loss**" shall also mean the failure to comply with the privacy provisions of the
Health Insurance Portability and Accountability Act of 1996 and any rules or
regulations promulgated thereunder (" **HIPAA**").

**ENDORSEMENT# *3*** **(Continued)**

This endorsement, effective *12:01 am* *August 1, 2006* forms a part of
policy number *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

Solely for purposes of this endorsement, " **Loss**" shall also include civil money penalties imposed upon an **Insured** for violation of the privacy provisions of **HIPAA** (" **HIPAA Penalties**"). The maximum limit of the **Insurer's** liability for all **HIPAA Penalties** imposed upon any one **Insured** shall be $25,000, and for all **HIPAA Penalties** imposed upon all Insureds shall be $50,000 in the aggregate combined (" **HIPAA Sublimits of Liability**"). The HIPAA Sublimits of Liability shall be part of and not in addition to the Policy Aggregate **Limit of Liability** set forth in Item 3(a) of the Declarations and shall in no way serve to increase such Policy Aggregate **Limit of Liability.**

D.   **RETENTION AND SUBROGATION CLAUSES AMENDED**

1.   Clause 7. **RETENTION CLAUSE** is amended by deleting the last sentence thereof and replacing it with the following:

A single Retention amount shall apply to **Loss** (for which a Retention applies) arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts.**

Clause 7 is further amended to include the following paragraph at the end of such Clause:

It is further understood and agreed that in the event a **Sponsor Organization** refuses to pay an applicable Retention due to **Financial Insolvency,** then the **Insurer** shall commence advancing **Loss** incurred by a **Natural Person Insured** within the Retention and pursuant to the other terms, conditions and exclusions of this policy, provided that the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Sponsor Organization** pursuant to Clause 13. **SUBROGATION AND WAIVER OF RECOURSE.**

2.   Clause 13. **SUBROGATION AND WAIVER OF RECOURSE** shall be amended by deleting the first paragraph thereof and replacing it with the following:

(a)   In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of the **Insureds.** In no event shall the **Insurer** exercise its rights of subrogation against an

**ENDORSEMENT# *3*   (Continued)**

This endorsement, effective *12:01 am   August 1, 2006*   forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

Insured under this policy unless:

(i)   such **Insured** has been convicted of a criminal act; or has committed a deliberate fraudulent act or knowingly or willingly violated any statute, rule or law (including but not limited to **Employee Benefit Law**) if a judgment or final adjudication or a binding arbitration proceeding adverse to the **Insured(s)** establishes that such deliberate fraudulent act or knowing or willful violation of a statute, rule or law was committed; or has obtained any profit or advantage to which a judgment or final adjudication or a binding arbitration proceeding adverse to such Insured establishes such **Insured** was not legally entitled; or

(ii)   with respect to a **Sponsor Organization**, the **Insurer** is seeking recovery from such **Sponsor Organization** pursuant to subparagraph (b)(i) of this Clause.

(b)   In the event that the **Insurer** shall pay **Loss** incurred by a **Natural Person Insured** within a Retention due to the **Financial Insolvency** of a **Sponsor Organization**, the **Insurer**:

(i)   shall be subrogated to the **Natural Person Insured's** right of recovery from the **Sponsor Organization**, or in the event of a bankruptcy of the **Sponsor Organization**, from the debtor-in-possession (or equivalent status outside the United States), of the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Sponsor Organization** (hereinafter " **Retention Loss**"); and

(ii)   shall have a direct contractual right under the policy to recover from the **Sponsor Organization**, or in the event of a bankruptcy of the **Sponsor Organization**, from the debtor-in-possession (or equivalent status outside the United States), the **Retention Loss**. Such direct contractual right of recovery against the **Sponsor Organization** shall be in addition to and independent of the **Insurer's** subrogation rights pursuant to subparagraph (i) above.

**ENDORSEMENT# *3***     **(Continued)**

This endorsement, effective *12:01 am*    *August 1, 2006*    forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

3.     For purposes of this endorsement, the following definition shall apply:

"**Financial Insolvency**" means the: (i) appointment by any state or federal official, agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Sponsor Organization**; or (ii) the **Sponsor Organization** becoming a debtor-in-possession pursuant to the United States bankruptcy law, and as to both (i) or (ii), the equivalent status outside the United States of America.

E.     **PLANS THAT ARE INADVERTENTLY NOT DISCLOSED**

The Definition of "**Plan**" shall be amended by adding the following at the end of subparagraph (1):

provided, however, that in the event the **Named Sponsor** inadvertently fails to provide written notice of such **Pension Plan** prior to the inception date of this policy, then this policy shall apply to such **Plan** (subject to all other terms, conditions, limitations and exclusions of the policy and any endorsement thereto, whether such endorsement precedes or follows this endorsement), but only in the event that the following conditions are satisfied:

(1)     the **Named Sponsor** shall have provided the **Insurer** with a completed application for such **Pension Plan** as soon as practicable after discovering such inadvertent failure to provide written notice, and shall have agreed to any additional premium or amendment of the provisions of the policy required by the **Insurer** relating to such **Pension Plan**; and

(2)     such **Pension Plan** does not constitute one of the five largest **Pension Plans** of the **Sponsor Organization**; and

(3)     such **Pension Plan** is not an **ESOP**, stock option plan, **Cash Balance Plan** (as defined above), or **Pension Equity Plan** (as defined above).

ENDORSEMENT# *3* (Continued)

This endorsement, effective *12:01 am* *August 1, 2006* forms a part of
policy number *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

F.    **EXCLUSIONS AMENDED**

Clause 5. **EXCLUSIONS**, paragraphs (a) and (b) are deleted in their entirety and replaced with the following:

(a)    arising out of, based upon or attributable to the gaining of any profit or advantage if a judgment or final adjudication or a binding arbitration proceeding adverse to the **Insured(s)** establishes the **Insured(s)** was not legally entitled to such profit or advantage;

(b)    arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act, or knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law**, if a judgment or final adjudication or a binding arbitration proceeding adverse to the **Insured(s)** establishes such criminal or deliberate fraudulent act, or knowing or willful violation of any statute, rule or law, including but not limited to **Employee Benefit Law;**

Ÿ The **Wrongful Act** of any **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusions 5(a) and 5(b)."

G.    **NOTICE PROVISION AMENDED**

Clause 8. **NOTICE/CLAIM REPORTING PROVISION**, paragraph (a)(2) is deleted in its entirety and replaced with the following:

(2)    within sixty (60) days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final sixty (60) days of the **Policy Period** or the **Discovery Period** (if applicable).

H.    **SEVERABILITY OF THE APPLICATION**

The following Clause is added to the policy at the end thereof:

**SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** as being accurate and complete. All such statements, warranties and representations

**ENDORSEMENT# *3*     (Continued)**

This endorsement, effective *12:01 am     August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

are the basis for this policy and are to be considered as incorporated into this policy.

The **Insureds** agree that in the event that the statements, warranties and representations contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the Insurer under the policy, then the coverage provided by this Policy shall be deemed void *ab initio* solely with respect to any of the following **Insureds**:

(1)     solely with respect to **Loss** other than non- **Indemnifiable Loss**, any **Natural Person Insured** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the **Application**;

(2)     a **Sponsor Organization**, if:

    (i)     the person who executed the **Application**; or

    (ii)    any past or present chief executive officer, chief operating officer or chief financial officer (or any equivalent position) of such **Sponsor Organization**,

    knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**;

(3)     a **Plan** and any other **Insured** who is not a **Natural Person Insured**, if:

    (iii)   the person who executed the **Application**; or
    (iv)    any past or present chief executive officer, chief operating officer or chief financial officer (or any equivalent position) of a **Sponsor Organization**,

    knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**,

whether or not such **Natural Person Insured** knew that such facts were not accurately and completely disclosed in the **Application**.

Solely with respect to any non- **Indemnifiable Loss** of any **Natural Person Insured**, under no circumstances shall the coverage provided by this Policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other

**ENDORSEMENT# 3    (Continued)**

This endorsement, effective *12:01 am    August 1, 2006*    forms a part of
policy number  *672-80-19*
issued to  *NORTHROP GRUMMAN CORPORATION*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

terms, conditions and exclusions of the Policy.

For purposes of this endorsement, "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein, any other documents submitted in connection with the underwriting of this policy or the underwriting of any other fiduciary liability policy (or equivalent policy) issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, as well as any public documents filed by the **Sponsor Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC) and the Department of Labor (DOL)), CPA-audited financial statements for all **Plans**, with investment portfolios, and Form 5500 for all **Plans.**

It is understood and agreed that this clause supercedes any inconsistent language contained in the **Application.**

I.   **BANKRUPTCY AND ORDER OF PAYMENTS PROVISIONS**

The following Clauses are added to the policy:

**BANKRUPTCY**

Bankruptcy or insolvency of any **Sponsor Organization** or any **Natural Person Insured** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Natural Person Insureds.** Further, if a liquidation or reorganization proceeding is commenced by the **Named Sponsor** and/or any other **Sponsor Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a)   waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

*COPY       END 3*

**ENDORSEMENT# *3*     (Continued)**

This endorsement, effective *12:01 am     August 1, 2006*     forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

    (b)      agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

**ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

    (a)      first, pay **Loss** for which coverage is provided under this policy for any **Natural Person Insured** under this policy;

    (b)      then, only after payment of **Loss** has been made pursuant to paragraph (a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, shall payment for any covered **Plan** be made for such other **Loss** for which coverage is provided under this policy; and

    (c)      then, only after payment of **Loss** has been made pursuant to paragraphs (a) and (b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payments, shall payment for the **Sponsor Organization** be made for such other **Loss** for which coverage is provided under this policy.

The above **ORDER OF PAYMENTS** clause shall supercede any inconsistent provision(s) contained in the policy or in any endorsement thereto, whether any such endorsement precedes or follows this endorsement.

**J.**    **STATE AMENDATORY INCONSISTENT**

In consideration of the premium charged, it is hereby understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this policy, other than any state amendatory that amends the Discovery Provisions

<u>**ENDORSEMENT# 3**</u>      **(Continued)**

This endorsement, effective *12:01 am*      *August 1, 2006*      forms a part of
policy number  *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

of said policy, and any term or condition of this policy, then it is understood and
agreed that, where permitted by law, the **Insurer** shall apply those terms and
conditions of either the state amendatory or the policy which are more favorable to
the **Insured**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*      *END 3*

### ENDORSEMENT# *4*

This endorsement, effective *12:01 am*    *August 1, 2006*     forms a part of
policy number  *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that any coverage provided under this policy for punitive, exemplary or multiple damages is subject to any limitation of such coverage provided by California law, if applicable.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 5

This endorsement, effective *12:01 am*    *August 1, 2006*          forms a part of
policy number  *672-80-19*
issued to    *NORTHROP GRUMMAN CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADDITIONAL LISTED PLANS

In consideration of the premium charged, it is hereby understood and agreed that the
Definition of " **Plan**" shall also include the following listed **Plan(s)**, subject to the
corresponding Continuity Date:

| PLAN(S) | CONTINUITY DATE |
|---|---|
| Northrop Grumman Savings Plan | August 1, 1985 |
| TRW Employee Stock Ownership & Savings Plan | December 11, 2002 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*        *END 5*

### ENDORSEMENT# 6

This endorsement, effective *12:01 am     August 1, 2006*     forms a part of
policy number  *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TIE-IN OF LIMITS ENDORSEMENT
#### (COMMON CLAIM)

In consideration of the premium charged, it is hereby understood and agreed that with respect to any **Claim(s)** alleging the same **Wrongful Act** or related **Wrongful Act(s)**, in which at least one person/entity claimed against is an Insured under this policy, and at least one person/entity claimed against is an **Insured** under the Directors & Officers and Corporate Liability/Employee Benefit Plan Fiduciary Liability, 468-99-21 (or any successor or replacement thereof), issued by the **Insurer** to Northrop Grumman Corporation, the combined limit of liability under both policies for such **Claim(s)** shall be $25,000,000. This limitation shall apply even if both policies have been triggered due to a **Claim** against the same person/entity but alleging **Wrongful Act(s)** both in his/her/its capacity as an Insured of Northrop Grumman Corporation and as an Insured of the **Sponsor Organization.**

Nothing in this endorsement shall be construed to increase the **Insurer's Limit of Liability** under this policy as stated in Item 3. of the Declarations page, which shall remain $15,000,000.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*        **END 6**

ENDORSEMENT# 7

This endorsement, effective *12:01 am*   *August 1, 2006*   forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RETENTION AMENDED**
**ALL LOSS OTHER THAN NON-INDEMNIFIABLE AND VOLUNTARY COMPLIANCE**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.   Item 4 of the Declarations is deleted in its entirety and replaced with the following:

| 4 | RETENTION: | (i) | non- **Indemnifiable Loss** of a **Natural Person Insured**: | None |
| | | (ii) | **Voluntary Compliance Loss**: | None |
| | | (iii) | Judgments, Settlements and **Defense Costs** for **Sponsor Organization, Plan** or **Natural Person Insured** for **Indemnifiable Loss**: | **$2,500,000** (for **Loss** arising from **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**) |

2.   The Clause of the policy  entitled RETENTION CLAUSE is deleted  in its entirety and
replaced with the following:

**RETENTION CLAUSE**

The **Insurer** shall only be liable for the amount of **Loss** arising  from a **Claim** which is
in excess of the Retention amount stated in Item 4 of the Declarations, such
Retention amount  to  be  borne by  the  **Insured** and shall  remain uninsured, with
regard to all **Loss** other than: (1) non- **Indemnifiable Loss** of a **Natural Person Insured**;
and (2) **Voluntary Compliance Loss**.   A single Retention amount shall  apply to **Loss**
arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 7*

### ENDORSEMENT# *8*

This endorsement, effective *12:01 am*      *August 1, 2006*          forms a part of
policy number  *672-80-19*
issued to    *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

### DEFENSE PROVISION AMENDED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause
2(c) is amended to the extent necessary to provide the following:

> Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose
> of all **Claims** which are subject to one Retention amount (inclusive of **Defense
> Costs**) for an amount not exceeding any applicable Retention amount, then the
> **Insurer's** consent shall not be required for such disposition.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

COPY              END 8

## ENDORSEMENT# *9*

This endorsement, effective *12:01 am*     *August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AUTO PLAN THRESHOLD AMENDED

In consideration of the premium charged, it is hereby understood and agreed that subparagraphs (5)(a) and (b) of the Definition of " **Plan**" are deleted in their entirety and replaced with the following:

 (5)    if such **Plan** is a Pension Plan (other than an **ESOP**, or stock option plan) and:

  (a)    is acquired during the **Policy Period** as a result of the **Sponsor Organization's** acquisition of a **Subsidiary** whose assets total more than 10% of the total consolidated assets of the **Sponsor Organization** as of the inception date of this policy; or

  (b)    is acquired during the **Policy Period** and such **Plan's** assets total more than 10% of the total consolidated assets of all covered **Pension Plans** as of the inception date of this policy,

 then, this policy shall apply to such **Plan** (but solely with respect to a **Wrongful Act(s)** occurring after the date of such acquisition), but only upon the condition that within 90 days of its acquisition, the **Named Sponsor** shall have provided the **Insurer** with a completed application for such new **Plan** and agreed to any additional premium or amendment of the provisions of the policy required by the **Insurer** relating to such new **Plan**. The 90 day reporting condition shall not apply if such new **Plan** does not constitute one of the five largest **Pension Plans** of the **Sponsor Organization** and the failure to report such **Plan** within the 90 day reporting period was due to inadvertent omission by the **Named Sponsor** and upon discovery of such **Plan**, the **Named Sponsor** shall notify the **Insurer** as soon as practicable, provide any information required by the **Insurer** relating to such **Plan** and pay any premium required by the **Insurer** relating to such **Plan**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

### ENDORSEMENT# *10*

This endorsement, effective *12:01 am     August 1, 2006*          forms a part of
policy number · *672-80-19*
issued to    *NORTHROP GRUMMAN CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRIOR ACTS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** arising from a **Claim** for an alleged **Wrongful Act** or **Breach of Fiduciary Duty** which occurred prior to January 1, 1975 or after the end of the **Policy Period**. This policy only provides coverage for **Loss** arising from a **Claim** for an alleged **Wrongful Act** or **Breach of Fiduciary Duty** occurring on or after January 1, 1975 and prior to the end of the **Policy Period** and which is otherwise covered by this policy. **Loss** arising out of the same or related **Wrongful Act** or related **Breach of Fiduciary Duty** shall be deemed to arise from the first such same or related **Wrongful Act(s)** or **Breach(s) of Fiduciary Duty.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *11***

This endorsement, effective *12:01 am*      *August 1, 2006*          forms a part of
policy number  *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PRIOR ACTS EXCLUSION FOR LISTED ENTITIES

In consideration of the premium charged, it is hereby understood and agreed that solely
with respect to the entities listed below, the **Insurer** shall not be liable to make any
payment for **Loss** arising from a **Claim** for an alleged **Wrongful Act** or **Breach of Fiduciary
Duty** which occurred prior to such entity's respective acquisition/creation date listed below
or after the end of the **Policy Period**. This policy only provides coverage for **Loss** arising
from a **Claim** for an alleged **Wrongful Act** or **Breach of Fiduciary Duty** occurring on or after
such entity's respective acquisition/creation date and prior to the end of the **Policy Period**
and which is otherwise covered by this policy. **Loss** arising out of the same or related
**Wrongful Act** or related **Breach of Fiduciary Duty** shall be deemed to arise from the first
such same or related **Wrongful Act(s)** or **Breach(s) of Fiduciary Duty.**

| ENTITY(IES) | ACQUISITION/CREATION DATE |
|---|---|
| Grumman Corporation | May 18, 1994 |
| Litton Industries, Inc. | April 3, 2001 |
| Newport News Shipbuilding | November 30, 2001 |
| TRW, Inc. | December 11, 2002 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# *12*

This endorsement, effective *12:01 am      August 1, 2006*          forms a part of
policy number *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE OF CLAIM AMENDED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause 8.
**NOTICE/CLAIM REPORTING PROVISIONS**, paragraph (b) is deleted in its entirety and
replaced with the following:

    (b)    If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause
8(a) above, then a **Claim** which is subsequently made against an **Insured** and
reported to the **Insurer** alleging, arising out of, based upon or attributable to
the facts alleged in the **Claim** for which such notice has been given, or
alleging any **Wrongful Act** which is the same as or related to any **Wrongful
Act** alleged in the **Claim** of which such notice has been given, shall be
considered related to the first **Claim** and made at the time the first **Claim**
was made.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 12*

**ENDORSEMENT# *13***

This endorsement, effective *12:01 am    August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXCLUSION (d) AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
5. **EXCLUSIONS,** paragraph (d) is deleted in its entirety and replaced with the following:

(d)     alleging, arising out of, based upon or attributable to the facts alleged, or to
        the same or related **Wrongful Acts** alleged or contained in any **Claim** which
        has been reported prior to the inception of this policy, or in any
        circumstances of which notice has been given prior to the inception of this
        policy, under any policy of which this policy is a renewal or replacement or
        which it may succeed in time;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 13*

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am*      *August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF THE APPLICATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the following Clause is added to the policy at the end thereof:

#### SEVERABILITY

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** as being accurate and complete. All such statements, warranties and representations are the basis for this policy and are material to the risk assumed by the **Insurer**, and are to be considered as incorporated into this policy.

Further, for the purposes of coverage as is afforded by this policy, the term " **Application**" means: (1) each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other employee benefit plan fiduciary (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time; (2) audited financial statements for each **Plan**; and (3) any public documents filed by a **Sponsor Organization** with any federal, state, local or foreign regulatory agency (including, but not limited to, the Securities and Exchange Commission (SEC)) preceding the inception date of this policy.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete, then this Policy shall be void as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**) and as to any **Insured** to whom such knowledge is imputed.

For purposes of determining whether knowledge shall be imputed to an **Insured**:

(1)     knowledge possessed by a past or present: (i) chief executive officer or (ii) chief financial officer of the **Named Sponsor** shall be imputed to all **Insureds**; and

**ENDORSEMENT# *14*   (Continued)**

This endorsement, effective *12:01 am      August 1, 2006*      forms a part of
policy number  *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

    (2)    knowledge possessed by an **Insured Person**, other  than a past or present: (i) chief executive  officer or  (ii) chief  financial  officer of  the **Named  Sponsor** shall not  be  imputed  to  any  other  **Natural Person Insured**, but shall be imputed to the **Sponsor Organization.**

Notwithstanding the  foregoing, this policy shall provide  coverage, subject to  the policy's terms, conditions and exclusions, for any non-**Indemnifiable Loss** of any **Natural Person Insured** to whom knowledge is imputed pursuant to subparagraph (1) above, provided that  such **Natural  Person Insured**  did not  have knowledge  of the facts that were not accurately and completely disclosed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 15

This endorsement, effective  *12:01 am      August 1, 2006*      forms a part of
policy number  *872-80-19*
issued to  *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### WORLDWIDE EXTENSION CLAUSE AMENDED

### (DEFINITION OF FOREIGN POLICY AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

1.      Clause 2. **DEFINITIONS**, is amended by deleting the Definition of " **Foreign Policy**" in its entirety and replacing it with the following:

" **Foreign Policy**" means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard fiduciary or pension trust liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **Foreign Policy** means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any other company of AIG in that **Foreign Jurisdiction**. The term **Foreign Policy** shall not include any directors and officers, partnership, managerial, comprehensive general liability, employment practices liability or professional liability coverage.

2.      Clause 4. **WORLDWIDE EXTENSION** is deleted in its entirety and replaced with the following:

4.      **WORLDWIDE EXTENSION**

Where legally permissible, this policy shall apply to a **Claim** made against any **Insured** anywhere in the world.

With regard to **Claim(s)** brought and maintained solely in a **Foreign Jurisdiction** against an **Insured** formed and operating in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** approved by AIG to be sold within such **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy; provided that if more than one such policy exists, then the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any other company of AIG in such **Foreign Jurisdiction**, that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1, 3-5, 9-13, and 16-19 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

*COPY*            *END 15*

## ENDORSEMENT# 15   (Continued)

This endorsement, effective *12:01 am    August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

---

All premiums, limits, retentions, **Loss** and other amounts under this policy are
expressed and payable in the currency of the United States of America. If judgment
is rendered, settlement is denominated or other elements of **Loss** are stated or
incurred in a currency other than United States of America dollars, payment of
covered **Loss** due under this policy (subject to the terms, conditions and limitations
of this policy) will be made either in such other currency (at the option of the
**Insurer** and if agreeable to the **Named Sponsor**) or, in United States of America
dollars, at the rate of exchange published in The Wall Street Journal on the date the
**Insurer**'s obligation to pay such **Loss** is established (or if not published on such date
the next publication date of The Wall Street Journal).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 15*

ENDORSEMENT# *16*

This endorsement, effective *12:01 am*     *August 1, 2006*          forms a part of
policy number  *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DEFENSE PROVISION AMENDED ENDORSEMENT**

In consideration of the premium charged,  it is hereby understood and  agreed that the first
paragraph of Clause 2(c) is deleted in its entirety and replaced the following:

> The **Insurer** shall  advance **Defense  Costs** no  later than ninety  (90) days  after the
> receipt by the **Insurer**  of such defense  bills, subject to  the other provisions  of this
> policy.  Such advance payments by the **Insurer**  shall be repaid to the **Insurer** by  the
> **Insureds,** severally according  to their respective  interests, in  the event and  to the
> extent that the **Insureds** shall not be entitled  under the terms and conditions of this
> policy to payment of such **Loss.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*              *END 16*

ENDORSEMENT# *17*

This endorsement, effective *12:01 am    August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to   *NORTHROP GRUMMAN CORPORATION*

by ·   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CLAUSE 12(a)(1) AMENDED**

In consideration of the premium charged, it is hereby understood and agreed that Clause
12. ORGANIZATIONAL CHANGES, paragraph (a) is hereby amended by deleting
subparagraph (1) in its entirety and replacing it with the following:

    (1)    the **Named Sponsor** shall consolidate with or merge into another entity such
           that the **Named Sponsor** is not the surviving entity, or sell all or substantially
           all of its assets to any other person or entity or group of persons or entities
           acting in concert; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *18***

This endorsement, effective *12:01 am*      *August 1, 2006*          forms a part of
policy number   *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____

AUTHORIZED REPRESENTATIVE

89644 (7/05)   **COPY**                    Page 1 of 1

**ENDORSEMENT# *19***

This endorsement, effective *12:01 am*      *August 1, 2006*                    forms a part of
policy number   *672-80-19*
issued to *NORTHROP GRUMMAN CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| *77893* | *03/01* | *PTL0301 DEC* |
| *81285* | *01/03* | *Tria Dec Disclosure Form* |
| *77892* | *03/01* | *PTL0301 GUTS* |
| *APPMAN* | *06/06* | *EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL* |
| *52133* | *03/94* | *CALIFORNIA AMENDATORY – CANCELLATION/NONRENEWAL* |
| *PENMAN* | | *3/01 EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY AMENDATORY* |
| *MNSCPT* | | *AON AMENDATORY ENDORSEMENT* |
| *MNSCPT* | | *CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT* |
| *MNSCPT* | | *ADDITIONAL LISTED PLANS* |
| *MNSCPT* | | *TIE-IN OF LIMITS ENDORSEMENT* |
| *MNSCPT* | | *RETENTION AMENDED* |
| *MNSCPT* | | *DEFENSE PROVISION AMENDED ENDORSEMENT* |
| *MNSCPT* | | *AUTO PLAN THRESHOLD AMENDED* |
| *MNSCPT* | | *PRIOR ACTS EXCLUSION* |
| *MNSCPT* | | *PRIOR ACTS EXCLUSION FOR LISTED ENTITIES* |
| *MNSCPT* | | *NOTICE OF CLAIM AMENDED ENDORSEMENT* |
| *MNSCPT* | | *EXCLUSION (d) AMENDATORY ENDORSEMENT* |
| *MNSCPT* | | *SEVERABILITY OF THE APPLICATION ENDORSEMENT* |
| *MNSCPT* | | *WORLDWIDE EXTENSION CLAUSE AMENDED* |
| *MNSCPT* | | *DEFENSE PROVISION AMENDED ENDORSEMENT* |
| *MNSCPT* | | *CLAUSE 12(a)(1) AMENDED* |
| *89644* | *07/05* | *COVERAGE TERRITORY ENDORSEMENT (OFAC)* |
| *78859* | *10/01* | *FORMS INDEX ENDORSEMENT* |

AUTHORIZED REPRESENTATIVE

*END 019*

# EXHIBIT B

02/22/2007 11:03 AM E24B2_232



**CNA INSURANCE COMPANIES**
CNA Plaza
Chicago, IL 60685

**DECLARATIONS
EXCESS INSURANCE
POLICY**

**NOTICE**

**THIS IS A "CLAIMS MADE" POLICY AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR ANY CLAIM FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE EXTENDED REPORTING PERIOD APPLIES. THE LIMIT OF LIABILITY SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS.**

| ACCOUNT NUMBER | COVERAGE PROVIDED BY | |
|---|---|---|
| 42222 | Continental Casualty Company | |
| POLICY NUMBER | | AGENCY |
| DOX 120196961 | | 910 735649 |

| NAMED ENTITY AND PRINCIPAL ADDRESS | AGENT |
|---|---|
| Item 1. | Northrop Grumman Corporation<br>1840 Century Park East<br>Los Angeles, CA 90067<br><br>Attn. David H Strode | Aon Risk Services<br>Higgins Manker<br>707 Wilshire Blvd.<br>Ste. 6000<br>Los Angeles, CA 90017 |

Item 2. Policy Period:

8/1/2006          To          8/1/2007

12:01 A.M. Standard Time at the Principal Address stated in item 1.

Item 3. Limit of Liability (Inclusive of Defense Costs):

$ 15,000,000          Maximum aggregate Limit of Liability each Policy Period.

Item 4. Schedule of Underlying Insurance:
A. Primary Policy

| Name of Carrier | Policy No. | Limits | Ded/Ret. Amount |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | 672-80-00 | $15,000,000 | 0/0/$5,000,000 |

B. Underlying Excess Policy(ies):

**\*\*\* SEE ATTACHED SCHEDULE \*\*\***

Item 5. Policy Premium

$ 430,462

Item 6. Forms and Endorsements forming a part of this policy at inception:
FIG-1005-A, G-144894-A, PRO-9499, G-11713-A04, GSL-5084, GSL-6955-XX, GSL-1546XX

These Declarations along with the completed and signed Application and the Excess Insurance Policy, shall constitute the contract between the Insureds, the Named Entity, and the Insurer.

Date: _8/10/2006_

Secretary                    Chairman of the Board                    Authorized Representative

G-17728-A
(ED 04/92)

02/22/2007 11:03 AM E24B2_232



## EXCESS INSURANCE POLICY

In consideration of the payment of the premium and in reliance on all statements made and information furnished to Continental Casualty Company (hereinafter called the "Insurer"), and/or to the insurers of the **Underlying Insurance**, including the statements made in the **Application** made a part hereof and subject to all of the provisions of this Policy, the Insurer and the Insureds agree as follows:

**I.      INSURING AGREEMENT**

The Insurer shall provide the **Insureds** with excess coverage over the **Underlying Insurance** as set forth in Item 4 of the Declarations during the **Policy Period** set forth in Item 2 of the Declarations.  Coverage hereunder shall attach only after all such **Underlying Insurance** has been exhausted by payments for losses and shall then apply in conformance with the same provisions of the **Primary Policy** at its inception, except for premium, limit of liability and as otherwise specifically set forth in the provisions of this Policy.

**II.     POLICY DEFINITIONS**

**Application** shall mean the written application for this Policy, including any materials submitted therewith, which together shall be on file with the Insurer and deemed a part of and attached hereto as if physically attached to this Policy.

**Named Entity** means the organization named in Item 1 of the Declarations.

**Insureds** means those persons or organization(s) insured under the **Primary Policy**, at its inception.

**Policy Period** means the period from the effective date and hour of this Policy as set forth in Item 2 of the Declarations, to the Policy expiration date and hour set forth in Item 2 of the Declarations, or its earlier cancellation date or termination date, if any.

**Primary Policy** means the Policy scheduled in Item 4 (a) of the Declarations.

**Underlying Insurance** means all those Policies scheduled in Item 4 of the Declarations and any Policies replacing them.

**III.    MAINTENANCE OF UNDERLYING INSURANCE**

All of the **Underlying Insurance** scheduled in Item 4 of the Declarations shall be maintained during the Policy Period in full effect, except for any reduction of the aggregate limit(s) of liability available under the **Underlying Insurance** solely by reason of payment of losses thereunder.  Failure to comply with the foregoing shall not invalidate this Policy but the **Insurer** shall not be liable to a greater extent than if this condition had been complied with.  To the extent that any **Underlying Insurance** is not maintained in full effect during the currency of this **Policy Period**, then the **Insureds** shall be deemed to have retained any loss for the amount of the limit of liability of any **Underlying Insurance** which is not maintained as set forth above.

In the event of any actual or alleged (a) failure by the **Insureds** to give notice or to exercise any extensions under any **Underlying Insurance** or (b) misrepresentation or breach of warranties by any of the **Insureds** with respect to any **Underlying Insurance**, the Insurer shall not be liable hereunder to a greater extent than it would have been in the absence of such actual or alleged failure, misrepresentation or breach.

It is further a condition of this Policy that the **Insurer** shall be notified in writing, as soon as practicable of cancellation and/or alteration of any provisions of any of the policies of **Underlying Insurance**.

**IV.    LIMIT OF LIABILITY**

The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer for the **Policy Period**.

Costs of defense shall be part of and not in addition to the Limit of Liability in Item 3 of the Declarations, and such costs of defense shall reduce the Limit of Liability stated in Item 3 of the Declarations.

02/22/2007 11:03 AM E24B2_232

 

**V.    DEPLETION OF UNDERLYING LIMIT(S)**

In the event of the depletion of the limit(s) of liability of the **Underlying Insurance** solely as the result of actual payment of losses thereunder by the applicable insurers, this Policy shall, subject to the **Insurer's** Limit of Liability and to the other terms of this Policy, continue to apply to losses as Excess Insurance over the amount of insurance remaining under such **Underlying Insurance**.  In the event of the exhaustion of all of the limit(s) of liability of such **Underlying Insurance** solely as a result of payment of losses thereunder, the remaining limits available under this Policy shall, subject to the **Insurer's** Limit of Liability and to the other provisions of this Policy, continue for subsequent losses as primary insurance and any retention specified in the **Primary Policy** shall be imposed under this Policy as to each claim made; otherwise no retention shall be imposed under this Policy.

This Policy only provides coverage excess of the **Underlying Insurance**.  This Policy does not provide coverage for any loss not covered by the **Underlying Insurance** except and to the extent that such loss is not paid under the **Underlying Insurance** solely by reason of the reduction or exhaustion of the available **Underlying Insurance** through payments of loss thereunder.  In the event the insurer of one or more of the **Underlying Insurance** policies fails to pay loss in connection with any claim covered under the **Underlying Insurance** as a result of the insolvency, bankruptcy, or liquidation of said insurer, then the **Insureds** hereunder shall be deemed to have retained any loss for the amount of the limit of liability of said insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

If any **Underlying Insurance** bears an effective date which is prior to the effective date of this Policy and if any such insurance becomes exhausted or impaired by payment of loss with respect to any claim which, shall be deemed to be made prior to the effective date of this Policy, then with respect to any claim made after the effective date of this Policy, the **Insureds** shall be deemed to have retained any loss for the amount of any such **Underlying Insurance** which is exhausted or impaired by payment of loss with respect to such claim made prior to the effective date of this Policy.

**VI.    CLAIM PARTICIPATION**

The **Insured** shall not admit liability, consent to any judgment against them, or agree to any settlement which is reasonably likely to involve the Limit of Liability of this Policy without the **Insurer's** consent, such consent not to be unreasonably withheld.

The Insurer may, at its sole discretion, elect to participate in the investigation, settlement or defense of any claim against any of the **Insureds** for matters covered by this Policy even if the **Underlying Insurance** has not been exhausted.

All provisions of the **Underlying Insurance** are considered as part of this Policy except that it shall be the duty of the Insureds and not the duty of the **Insurer** to defend any claims against any of the **Insureds**.

**VII.    SUBROGATION - RECOVERIES**

In that this Policy is "Excess Coverage", the **Insureds** and the **Insurer's** right of recovery against any person or other entity may not be exclusively subrogated.  Despite the foregoing, in the event of any payment under this Policy, the **Insurer** shall be subrogated to all the **Insured's** rights of recovery against any person or organization, and the **Insureds** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

Any amounts recovered after payment of loss hereunder shall be apportioned in the inverse order of payment to the extent of actual payment.  The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**VIII.    NOTICE**

The **Insurer** shall be given notice in writing as soon as is practicable in the event of (a) the cancellation of any **Underlying Insurance** and (b) any additional or return premiums charged or allowed in connection with any **Underlying Insurance**. Notice regarding (a) and (b) above shall be given to Manager, Directors and Officers Liability Underwriting, CNA Insurance Companies, CNA Plaza, Chicago, Illinois 60685.

02/22/2007 11:03 AM E24B2_232



The **Insurer** shall be given notice as soon as practicable of any notice of claim or any situation that could give rise to a claim under any **Underlying Insurance**. Notice of any claim to the **Insurer** shall be given in writing to Manager, Professional Liability Claims, CNA Insurance Companies, CNA Plaza, Chicago, Illinois 60685.

## IX.   COMPANY AUTHORIZATION CLAUSE

By acceptance of this Policy, the **Named Entity** named in Item 1 of the Declarations agrees to act on behalf of all the **Insureds** with respect to the giving and receiving of notice of claim or cancellations, the payment of premiums and the receiving of any return premiums that may become due under this Policy; and the **Insureds** agree that the **Named Entity** shall in all cases be authorized to act on their behalf.

## X.   ALTERATION

No change in or modification of this Policy shall be effective except when made by endorsement signed by an authorized employee of the **Insurer** or any of its agents relating to this Policy.

## XI.   POLICY CANCELLATION

This Policy may be cancelled by the **Named Entity** at any time by written notice or by surrender of this Policy to the **Insurer**. This Policy may also be cancelled by or on behalf of the **Insurer** by delivery to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified or other first class mail, at the address shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall become effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this Policy shall cancel at the date and hour specified in such notice.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

The **Insurer** shall refund the unearned premium computed at less than pro-rata if the Policy is cancelled in its entirety by the **Named Entity**. Under any other circumstances the refund shall be computed pro-rata.

## XII.   EXCLUSIONS

Notwithstanding any provisions of the **Underlying Insurance**, the **Insurer** shall not be liable to make payment for loss in connection with any claim based upon, arising out of, relating to, directly or indirectly resulting from, or in consequence of, or in any way involving:

1.    nuclear reaction, radiation, or contamination regardless of causes;

2.    pollutants, including but not limited to loss arising out of any:

    a.   request, demand or order that any of the **Insureds** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants, or

    b.   claim by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

02/22/2007 11:03 AM E24B2_232

**XIII.    CONDITIONS**

No action shall be taken against the **Insurer** unless, as a condition precedent, there shall have been full compliance with all the provisions of this Policy, nor until the amount of the **Insureds** obligation to pay shall have been finally determined either by final and nonappealable judgement against the **Insureds** after trial, or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Secretary                                        Chairman of the Board

G-17729-A (ED. 04/92)                                                            Page 4 of 4

02/22/2007 11:03 AM E24B2_232



**PRIOR NOTICE EXCLUSION**

In consideration of the premium paid for this policy, it is agreed that Section **XII. EXCLUSIONS**, is amended with the addition of the following:

Any fact, circumstance, situation, transaction or event which constitutes the basis of notice of claim to the Insurer or any insurance carriers designated in Item 4 of the Declarations, prior to the inception date of this policy.

All other provisions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

---

FIG-1005-A (07-94)
Page 1

Policy No: 120196961
Endorsement No: 1
Effective Date:

02/22/2007 11:03 AM E24B2_232



# IMPORTANT INFORMATION
# POLICYHOLDER DISCLOSURE

## NOTICE OF INSURANCE COVERAGE
## FOR ACTS OF TERRORISM

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions.   The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

If you want to purchase this coverage, you must pay $__0 Premium.

If you do not want to purchase this coverage, you must sign below and return this form to us at the address indicated below.

BY SIGNING BELOW, I AGREE THAT I AM REJECTING COVERAGE FOR LOSSES ARISING OUT OF CERTIFIED ACTS OF TERRORISM, AS DEFINED IN THE ACT.  I UNDERSTAND THAT LOSSES ARISING FROM ACTS OF TERRORISM WILL BE EXCLUDED.

| Northrop Grumman | Continental Casualty Company |
|---|---|
| Applicant/Named Insured | Insurance Company |

By: _____

| Authorized Representative's Signature | Authorized Representative's Title |
|---|---|
| | 120196961 |
| Date | Policy Number |

Return the original form to us at the address below no later than 8/15/04.

We recommend that you keep a copy of this notice for your records.

405 Howard Street, Suite 600, San Francisco, CA, 94105

G-144894-A  Ed. 1/03
Page 1 of 1

02/22/2007 11:03 AM E24B2_232



**TRADE AND ECONOMIC SANCTIONS ENDORSEMENT**

In consideration of the premium paid, a new condition is added to the policy as follows:

This policy does not provide coverage for **Insureds**, transaction or that part of loss that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

All other provisions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required issued with the Policy or if it is effective on the Policy Effective Date)

---

PRO9499 (6-04)
Page 1
Continental Casualty Company
Insured Named: Northrop Grumman Corporation

Policy No:  120196961
Endorsement No:  3
Effective Date:

© CNA  All Rights Reserved.

02/22/2007 11:03 AM E24B2_232

## STATE PROVISIONS - CALIFORNIA

Any cancellation or non-renewal provisions contained in the policy to which this endorsement is attached are deleted and replaced by the following:

I.  Cancellation

    A.    This policy can be cancelled by either the first named insured or the insurer.

        1.    The named insured can cancel this policy at any time.  To do so, the named insured must:

            a.    return the policy to the insurer or any of the insurer's authorized representatives; or

            b.    mail a written notice to the insurer;

        stating when the cancellation is to be effective.  The insurer must receive the policy or written notice before cancellation date.

        2.    The insurer can cancel this policy by giving written notice to the named insured at least:

            a.    10 days, if cancellation is for:

                (1)    non-payment of premium.  The named insured may continue the coverage by payment in full at any time prior to the effective date of cancellation;

                (2)    fraud relating to this policy or to a claim made under this policy; or

            b.    30 days, if cancellation is for any other reason;

        before the effective date of cancellation.

    B.    The insurer will mail or deliver notice to the named insured at the mailing address shown in the policy. A copy shall also be mailed or delivered to the named insured's agent.

    C.    Notice of cancellation will state the effective date of cancellation.  The policy will end on that date.  The grounds for such cancellation shall also be stated.

    D.    If notice is mailed, proof of mailing will be sufficient proof of notice.

This endorsement, which forms a part of and is for attachment to the following described Policy issued by the designated Insurers takes effect on the effective date of said Policy, unless another effective date is shown below, at the hour stated in said Policy and expires concurrently with said Policy.

| Must be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy or is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 4 | 120196961 | | |

**CNA**
For All the Commitments You Make®

Countersigned by _____

                                       Authorized Representative

**Page 1 of 3**

*CNA INSURANCE COMPANIES*
G-11713-A04
(ED. 12/86)

02/22/2007 11:03 AM E24B2_232

E. If this policy is cancelled, the insurer will send the first named insured any premium refund due. If the insurer cancels, the refund will be pro-rata. If the named insured cancels, the refund may be less than pro-rata.

The cancellation will be effective even if the insurer has not made or offered a refund.

F. If this policy has been in effect for more than 60 days or is a renewal policy, the insurer shall not terminate this policy except for one or more of the following conditions:

1. non-payment of premium;

2. any:

   a. material misrepresentations; or

   b. fraud relating to this policy or to a claim made under this policy;

   c. discovery of willful or grossly negligent acts or omissions; or

   d. violation of state laws or regulations;

   by or with the knowledge of the named insured or the named insured's representatives;

3. a material increase in the hazard insured against:

   a. which could not have been reasonably contemplated at the inception of the contract unless the named insured has notified the insurer of the change and the insurer has accepted it;

   b. having as one of its necessary elements the conviction of a crime;

4. failure to eliminate conditions that increase the chance of loss after notification that the condition must be removed;

5. substantial loss of reinsurance by the insurer affecting this particular type of insurance, certified by the insurance regulatory authority;

6. a determination by the insurance regulatory authority that continuation of the policy will place the insurer in violation of the insurance laws of the state or will jeopardize the insurer's solvency.

This endorsement, which forms a part of and is for attachment to the following described Policy issued by the designated Insurers takes effect on the effective date of said Policy, unless another effective date is shown below, at the hour stated in said Policy and expires concurrently with said Policy.

| Must be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy or is Not to be Effective with the Policy | |
| --- | --- | --- | --- |
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 4 | 120196961 | | |



Countersigned by _____

Authorized Representative ·

**Page 2 of 3**

*CNA INSURANCE COMPANIES*
G-11713-A04
(ED. 12/86)

02/22/2007 11:03 AM E24B2_232

II.    Non-Renewal

If the insurer decides not to renew this policy, at least 60 days but not more than 120 days advance written notice shall be mailed or delivered to the named insured at the address shown in this policy. The notice shall include the reason for such non-renewal.

SC 592-22 2887

This provision shall not apply in the event the named insured has:

A.    requested a change in the terms or conditions or hazards covered by the policy within 60 days prior to the end of the policy period;

B.    requested or agreed to non-renewal; or

C.    insured elsewhere or accepted replacement coverage.

This endorsement, which forms a part of and is for attachment to the following described Policy issued by the designated Insurers takes effect on the effective date of said Policy, unless another effective date is shown below, at the hour stated in said Policy and expires concurrently with said Policy.

| Must be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy _or is Not to be Effective with the Policy_ | | |
|---|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 4 | 120196961 | | | |

**CNA**
For All the Commitments You Make®

Countersigned by _____
                                    Authorized Representative

**Page 3 of 3**

*CNA INSURANCE COMPANIES*
G-11713-A04
(ED. 12/86)

02/22/2007 11:03 AM E24B2_232





**NOTICE OF CLAIM PROVISION ENDORSEMENT**

In consideration of the premium paid for this policy, it is agreed that Section **VIII. Notice** is deleted in its entirety and replaced with the following:

A.   The **Insureds** shall, as a condition precedent to their rights under this Policy, give the Insurer notice of any claim made against the **Insureds** in the same manner required by the terms and conditions of the **Primary Policy** and shall give the Insurer such information and cooperation as it may reasonably require.

B.   Any notice to the Insurer shall be given to:

CNA US Specialty Lines
40 Wall Street
New York, N.Y. 10005

All other terms and conditions of the Policy shall remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL5084 (9-04)
Page 1
Continental Casualty Company
Insured Named: Northrop Grumman Corporation

Policy No:   120196961
Endorsement No:   5   .
Effective Date:

© CNA  All Rights Reserved.

02/22/2007 11:03 AM E24B2_232



**AMEND CANCELLATION**
**(For Use with Excess Form G-17729-A)**

In consideration of the premium paid for this policy, it is agreed that Section **XI, POLICY CANCELLATION** is amended to add the following new language:

- In the event there is an inconsistency between this section and other cancellation or nonrenewal language in this Policy or the **Primary Policy**, including any endorsements attached to this Policy or the **Primary Policy** and any term or condition of this Policy or the **Primary Policy**, it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions most favorable to the **Insured**.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL6955XX (2-06)                                               Policy No:  120196961
Page 1                                                    Endorsement No:  6
Continental Casualty Company                               Effective Date:
Insured Named: Northrop Grumman Corporation

© CNA  All Rights Reserved.

02/22/2007 11:03 AM E24B2_232



**Amendment to Sections I., III. and V. of the Excess Insurance Policy G17729A**

1. Section I. **INSURING AGREEMENT** is amended to delete the second sentence and replace it as follows:

   Coverage hereunder shall attach only after all such **Underlying Insurance** has been exhausted by payments for losses in legal currency by the **Underlying Insurance** carriers or by the **Insureds**. Upon such exhaustion, this Policy shall then apply in conformance with the terms and conditions of the **Primary Policy** at its inception, except for premium, limit of liability and as otherwise provided in the provisions of this Policy.

2. Section III. **MAINTENANCE OF UNDERLYING INSURANCE** is amended to delete the first sentence and replace it as follows:

   All of the **Underlying Insurance** scheduled in Item 4 of the Declarations shall be maintained during the **Policy Period** in full effect, except for any reduction of the aggregate limit(s) of liability available under the **Underlying Insurance** solely by reason of payment of losses by the **Underlying Insurance** carriers or the **Insureds**.

3. The first paragraph of Section V. **DEPLETION OF UNDERLYING LIMIT(S)** is deleted in its entirety and replaced as follows:

   Only in the event of exhaustion of the limits of the **Underlying Insurance** by reason of the **Underlying Insurance** carriers and/or the **Insureds** paying in legal currency loss which, except for the amount thereof, would have been covered thereunder, this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the **Primary Policy**, which retention shall be applied to any subsequent loss in the same manner as specified in the **Primary Policy**.   Not withstanding paragraph 4 below, if any loss covered under any **Underlying Insurance** is subject to a sub-limit, then this Policy provides no coverage excess of such **Underlying Insurance** sub-limits. However, the **Underlying Limits** shall be deemed depleted by payment of any such sub-limits.

4. The second paragraph of Section V. **DEPLETION OF UNDERLYING LIMIT(S)**, is deleted in its entirety and replaced with the following:

   This Policy only provides coverage excess of the **Underlying Insurance**. This Policy does not provide coverage for any loss not covered by the **Underlying Insurance** except and to the extent that such loss is not paid under the **Underlying Insurance** solely by reason of the reduction or exhaustion of the available **Underlying Insurance** through payments of loss by the **Underlying Insurance** carriers and/or the **Insureds**. This Policy shall not drop down for any reason other than exhaustion of the limits of the **Underlying Insurance**, including, but not limited to, uncollectibility (in whole or in part) of any **Underlying Insurance** or any **Underlying Insurance** containing terms and conditions different than the **Primary Policy**. The risk of uncollectibility of such **Underlying Insurance** (in whole or in part), whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the Insurer.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____

(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL1546XX (6-05)
Page 1
Continental Casualty Company

Policy No:   120196961
Endorsement No:   7
Effective Date:

© CNA  All Rights Reserved.

# EXHIBIT C



## SECUREXCESS DECLARATIONS

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

| **COMPANY:** Axis Reinsurance Company | **POLICY NUMBER:** RLN715889/01/2006 |
|---|---|

| | |
|---|---|
| **Item 1. Policyholder:**<br> Northrop Grumman Corporation (Name)<br> 1840 Century Park East (Address)<br> Los Angeles, CA 90067 | **Item 2. Policy Period:**<br>a. Inception Date August 1, 2006<br>b. Expiration Date August 1, 2007<br><br>Both dates at 12:01 a.m. at the address listed in Item 1 |

**Item 3.** Limits of Liability (inclusive of defense costs):
a. Each **Claim**      $ 15,000,000
b. Maximum aggregate Limit of Liability for all **Claim(s)**
During the **Policy Period** of all **Insurance Products**      $ 15,000,000

**Item 4.** **Underlying Insurance** and **Insurance Products**: See Endorsement No. 1

**Item 5.** Endorsements Attached at Inception: Endorsement No. 1 - 6

**Item 6.** Notices to **Insurer:**

| Notice of **Claim(s)** To Be Sent To: | All Other Notices To Be Sent To |
|---|---|
| Axis Financial Insurance Solutions Claims<br>Address: Conn ell Corporate Park<br>     Three Connell Drive<br>     P.O. Box 357<br>     Berkeley Heights, NJ 07922-0357 | Axis Financial Insurance Solutions<br>Address: Connell Corporate Park<br>     Three Connell Drive<br>     P.O. Box 357<br>     Berkeley Heights, NJ 07922-0357 |

| **Item 7.** Pending and Prior Claim Date: August 1, 2002 | **Item 8** Terrorism Coverage Premium: $ 0 (included) |
|---|---|

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____       _August 10, 2006_____
Authorized Representative                  Date

      Secretary                          President

# SECUREXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows.

## I.   INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**.   In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

## II.   DEFINITIONS

A.   **Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

B.   **Insurance Product** means each separate type of insurance identified as an **"Insurance Product"** in Endorsement No. 1 to this Policy.

C.   **Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

D.   **Insurer** means the company identified as **"Insurer"** in the Declarations.

E.   **Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

F.   **Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

G.   **Primary Policy** means the specific policy identified as the **"Primary Policy"** under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

H.   **Sublimit** means any **Underlying Limits** which:

1.   applies only to a particular grant of coverage under such **Underlying Insurance**; and
2.   reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

I.   **Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

J.   **Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.

K.   **Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the

uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product**.

### III. CONDITIONS OF COVERAGE

A. For purposes of determining when insurance under this Policy shall attach and the limitations under which such insurance shall apply:

1. All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

2. All **Insureds** shall comply fully with all of the provisions of this Policy.

B. As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

C. If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change. No amendment to any **Primary Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the Insurer so agrees in writing. The Insurer may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

### IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS

A. If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

B. If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

C If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit**.

### V. LIMITS OF LIABILITY

A. The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

    **B.**   The amount stated in Item 3.b. in the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this Policy with respect to all **Claims** during the **Policy Period** for all **Insurance Products**.

    **C.**   This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

    **D.**   Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this Policy.

**VI. SETTLEMENTS AND DEFENSE**
    **A.**   No **Insured** under this Policy may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this Policy.

    **B.**   The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this Policy, regardless of whether the applicable **Underlying Insurance** has been exhausted.

    **C.**   The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this Policy.

**VII. SUBROGATION**
    **A.**   In the event of payment under this Policy, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

    **B.**   Any amount recovered after payment under this Policy and any **Underlying Insurance** policies shall be apportioned among the Insurer and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

**VIII. AUTHORIZATION**

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

**IX. NOTICE**

    **A.**   With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Primary Policy**.

    **B.**   All notices under this Policy shall be sent to the **Insurer** at the address set forth in Item 6. in the Declarations.

X. **MODIFICATION, CANCELLATION AND NONRENEWAL**

    **A.** No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

    **B.** The **Policyholder** may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

    **C.** The **Insurer** may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the **Policyholder** written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice.

    **D.** The **Insurer** shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the **Policyholder**.

    **E.** The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Policyholder** by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

    **F.** Notwithstanding anything to the contrary set forth elsewhere in the Policy, in the event that any **Underlying Insurance** is rescinded by agreement or legal process for fraud or other material misrepresentation by the **Policyholder** or any of the **Insureds**, then this Policy shall be deemed to be automatically and immediately rescinded, but only with respect to any **Insurance Product** containing such rescinded **Underlying Insurance**.

XI. **EXCLUSIONS**

The **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    **A.** Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

    **B.** Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on: _August 1, 2006_
To be attached to and form part of Policy Number: _RLN715889/01/2006_
Issued to: _Northrop Grumman Corporation_
By: _Axis Reinsurance Company_

# SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

The Schedule of **Underlying Insurance** and **Insurance Products** is as follows:

    **A.  Insurance Product:**    **Fiduciary Liability**

    **1.  Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | 672-80-19 | $15,000,000 | 08/01/06 – 08/01/07 |

    **2.**  Other Underlying Policies

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Continental Casualty Company | 120196961 | $15,000,000 xs $15,000,000 | 08/01/06 – 08/01/07 |

All other provisions remain unchanged.

_Authorized Representative_

Authorized Representative

_August 10, 2006_
Date

SE 1000 (Ed. 02 03)                          Page 1                         Printed in U.S.A.

Endorsement No. 2

Effective date of this endorsement:  12:01 a.m. on:  _August 1, 2006_
To be attached to and form part of Policy Number:  _RLN715889/01/2006_
Issued to:  _Northrop Grumman Corporation_
By:  _Axis Reinsurance Company_

# CALIFORNIA AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

## SECUREXCESS INSURANCE POLICY

1.   Section **X.**, **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph **C.** is amended by the
     addition of the following:

     The notice shall state the reason for the cancellation. Notice of cancellation shall be mailed or delivered to
     the **Policyholder** at the mailing address shown on the Policy and to the producer of record, if applicable,
     provided that the producer of record is not an employee of the **Insurer**.

2.   Section **X.**, **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph **E.** is deleted and
     replaced by the following:

     The **Insurer** shall have no obligation to renew this Policy upon its expiration. Once the **Insurer** chooses
     to nonrenew this Policy, or to condition renewal upon a reduction of the Policy's Limit of Liability, an
     elimination of coverage, an increase in retention or an increase of more than 25 percent of the current
     Policy's premium, the **Insurer** shall deliver or mail to the **Policyholder** at the mailing address shown on
     the Policy, and to the producer of record, if applicable, written notice stating such at least sixty (60) days
     but not more than one hundred twenty (120) days prior to the end of the **Policy Period** set forth in Item 2.
     in the Declarations. The notice shall include the specific reason for nonrenewal or conditional renewal.

All other provisions remain unchanged.

_____
Authorized Representative

_August 10, 2006_
Date

**SE 0501 (Ed. 1203)**                                                                 **Printed in U.S.A.**

Endorsement No. 3

Effective date of this endorsement: 12:01 a.m. on: __August 1, 2006__
To be attached to and form part of Policy Number: __RLN715889/01/2006__
Issued to: __Northrop Grumman Corporation__
By: __Axis Reinsurance Company__

## PRIOR NOTICE EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that the **Insurer** shall not be liable for any amount in any **Claim** which is based upon, arising from, or attributable to or inconsequence of any fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance.

All other provisions remain unchanged.

_____
Authorized Representative

__August 10, 2006__
Date

**SE1010 3/2001**

Endorsement No. 4

Effective date of this endorsement:  12:01 a.m. on:  _August 1, 2006_
To be attached to and form part of Policy Number:  RLN715889/01/2006
Issued to:  _Northrop Grumman Corporation_
By:  _Axis Reinsurance Company_

## PRIOR ACTS EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that, the Insurer shall not be liable for **Loss** arising from any **Claim** made against any **Insured** based upon, arising from, or attributable to any **Wrongful Act** actually or allegedly occurring before *December 11, 2002 for TRW* (hereinafter "Prior Acts") or any **Wrongful Act** whenever occurring, which together with any Prior Acts constitutes **Interrelated Wrongful Acts**.

All other provisions remain unchanged.

_____
Authorized Representative

_August 10, 2006_
Date

Endorsement No. 5

Effective date of this endorsement:  12:01 a.m. on:  _August 1, 2006_
To be attached to and form part of Policy Number: _RLN715889/01/2006_
Issued to:  _Northrop Grumman Corporation_
By:  _Axis Reinsurance Company_

## MANUSCRIPT APPLICATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed by the **Insurer** and **Insureds** that the application or proposal dated *May 22, 2006* and submitted to *AIG American International Companies* shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above.  The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

All other provisions remain unchanged.

_____
Authorized Representative


_August 10, 2006_____
Date

MU1032 (11/2001)

Endorsement No. 6

Effective date of this endorsement:  12:01 a.m. on:  _August 1, 2006_
To be attached to and form part of Policy Number:  _RLN715889/01/2006_
Issued to:  _Northrop Grumman Corporation_
By:  _Axis Reinsurance Company_

## MANUSCRIPT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that the second paragraph of Section I Insuring Agreement of the Policy is deleted and amended to read in its entirety as follows:

The insurance afforded under this Policy shall apply only after the **Underlying Insurers** and/or the **Insureds** or the **Policyholder** shall have paid the full amount of the **Underlying Limits** for covered loss under the **Underlying Insurance** and the **Policyholder** or the **Insureds** shall have paid the full amount of the applicable retention amount under any **Underlying Insurance**.

All other provisions remain unchanged.

Authorized Representative

_August 10, 2006_
Date