KILPATRICK TOWNSEND & STOCKTON, LLP
William T. Um (SBN 166536)
9720 Wilshire Boulevard PH
Beverly Hills, CA 90212
Telephone: (310) 777-3720
Facsimile:  (310) 388-5530
WUm@KilpatrickTownsend.com

SHAPIRO, LIFSCHITZ & SCHRAM
Barry J. Fleishman (*Admitted Pro Hac Vice*)
Laura Fraher (*Admitted Pro Hac Vice*)
1742 N Street
N.W. Washington, DC  20036
Telephone:  (202) 689-1900
Facsimile:  (202) 689-1901
Fleishman@slslaw.com
Fraher@slsaw.com

Attorneys for Defendant, NORTHROP GRUMMAN CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIS REINSURANCE COMPANY, a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHROP GRUMMAN CORPORATION, a corporation,<br><br>Defendant. | **CASE NO.: 2:17-CV-8660-AB-JCx**<br><br>**Hon. André Birotte Jr.**<br><br>**DEFENDANT NORTHROP GRUMMAN CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR STAY, OR, IN THE ALTERNATIVE, TRANSFER THE MATTER TO THE UNITED STATES DISTRICT COURT, DISTRICT OF DELAWARE**<br><br>Date:       March 16, 2018<br>Time:      10:00 a.m.<br>Dept.:      7B |

**NORTHROP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

I. THE DOL CLAIM SETTLEMENT PAYMENT ISSUE OVERLAPS BOTH THE CALIFORNIA AND DELAWARE ACTIONS, AND LITIGATION OF THAT CORE ISSUE IN DIFFERENT JURISDICTIONS WILL RESULT IN WASTE AND THE RISK OF INCONSISTENT RESULTS. ...................................................................... 4

    A. The California And Delaware Actions Both Require Resolution Of The Core Issue Regarding Whether Payments Towards Settlement Of The DOL Claim Properly Eroded The Limits Of The Insurance Policies Beneath The 2006 AXIS Policy. ................................................ 4

    B. The Central District Favors Transfer Where, As Here, There Is An Overlap Of Key Issues And The Risk Of Inconsistent Results. ............... 8

II. TRANSFER TO DELAWARE IN THE INTEREST OF JUSTICE IS WARRANTED BECAUSE NO SECTION 1404 FACTORS ESTABLISH A SIGNIFICANT CONNECTION WITH THIS DISTRICT. .............................................................................................................. 10

    A. There Are No Significant Connections With California. ..................... 10

    B. Plaintiff's Right To Choose Does Not Weigh In Favor Of Transfer. ....... 10

    C. Convenience Of Witnesses Does Not Weigh Against Transfer. ............. 11

    D. California Does Not Have A Strong State Interest In This Case. ............ 12

III. CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Scribner*,
    812 F.2d 426 (9th Cir. 1987) .................................................................................... 11

*Avalon Glass & Mirror Co., LLC v. Elec. Mirror, LLC*,
    2:16-cv-06444-CAS (SKx), 2016 U.S. Dist. LEXIS 172256 (C.D. Cal.
    Dec. 12, 2016) .................................................................................................... 2, 8

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) .................................................................................... 11

*Cont'l Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (1960) .................................................................................................... 2

*Foster v. Nationwide Mut. Ins. Co.*,
    No. C 07-04298 SI, 2007 U.S. Dist. LEXIS 95240 (N.D. Cal. Dec. 14,
    2007) ....................................................................................................................... 12

*Fraser v. Brightstar Franchising LLC*,
    Case No. 16-cv-01966, 2016 U.S. Dist. LEXIS 107900 ........................................ 11

*Ganezer v. DirectBuy, Inc.*,
    CV-08-8666 GAF (RCx), 2012 U.S. Dist. LEXIS 198190, at *16
    (C.D. Cal. Jan. 30, 2012) ....................................................................................... 12

*Geringer v. Strong*,
    Case No. 2:15-cv-08696-CAS, 2016 WL 2732134 (C.D. Cal. May 9,
    2016) .................................................................................................................... 2, 8

*Hawkins v. Gerber Prods. Co.*,
    924 F. Supp. 2d 1208 (S.D. Cal 2013) ................................................................... 12

*Intellisoft, Ltd. V. Toshiba Corp.*,
    Case No. SACV 12-0465-AG, 2012 U.S. Dist. LEXIS 193724 (C.D.
    Cal. June 11, 2012) ....................................................................................... 2, 4, 8, 11

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) .................................................................................... 10

*Marshall, et al. v. Northrop Grumman, et al.*,
   C.A. No. 16-6794, C.D. Cal., ........................................................................... 1, 3, 5, 12

*Matrix, Inc. v. Woodland Trading, Inc.*,
   CV 12-9228 ........................................................................................................... 10

*Mendoza v. Electrolux Home Prods.*,
   Case No. 1:17-cv-00839-LJO-SKO, 2017 U.S. Dist. LEXIS 182081
   (E.D. Cal. Nov. 2, 2017) ................................................................................ 2, 10, 12

*Mussetter Distrib., Inc. v. DBI Beverage Inc.*,
   NO. CIV. 09-1442 WBS EFB, 2009 U.S. Dist. LEXIS 61013 (E.D.
   Cal. July 8, 2009) ...................................................................................................... 2

*In Re Northrop Grumman Corporation ERISA Litigation*,
   Case No. CV 06-06213-MMM C. ............................................................................ 3

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ...................................................................................... 3

*Puri v. Hearthside Food Sols. LLC*,
   Case No. CV 11-8675-JFW, 2011 U.S. Dist. LEXIS 144191 (C.D.
   Cal. Dec. 13, 2011) ................................................................................................... 2

*Regents of the University of California v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) .............................................................................. 11

*Sorenson v. Daimler Chrysler AG*,
   No. C02-4752 MMC (EDL), 2003 U.S. Dist. LEXIS 6294 (N.D. Cal.
   April 14, 2003) ....................................................................................................... 10

*TMI Prods. v. Audiovox Corp.*,
   CV 09-1437 ...................................................................................................2, 9, 11

*Vehimax Int'l, LLC v. Jui Li Enter. Co.*,
   CV 09-6437 ......................................................................................................... 2, 8

*Ventress v. Japan Airlines*,
   486 F.3d 1111 (9th Cir. 2007) .................................................................................. 4

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
   Case No. C 03-3711 MHP, 2003 U.S. Dist. LEXIS 26802 (N.D. Cal.
   Oct. 14, 2003) ......................................................................................................... 10

*Zurich Am. Ins. Co. v. DS Waters of America, Inc.*,
 LA CV 12-09275 JAK, 2013 U.S. Dist. LEXIS 199197 (C.D. Cal.
 March 18, 2013).................................................................................................2, 3, 8

**Statutes**

28 U.S.C. §1404(a) Section 1404(a).......................................................................*passim*

## INTRODUCTION

AXIS' Opposition pinpoints the overlapping issue that is the backbone of both this California case (the "California Action") and the case simultaneously pending in Delaware[1] (the "Delaware Action"):

Did "the collective payment by National Union and Continental Casualty under their 2006 policies towards the settlement of a Department of Labor Investigation" constitute "covered loss?"

*See* Plaintiff AXIS' Opposition ("AXIS Opp.") at 6, ECF No. 29.  Resolution of this single issue is central both to the claim of AXIS in the California Action that it is entitled to reimbursement from Northrop, and to the claim of Northrop in the Delaware Action that AXIS has an immediate duty to reimburse Northrop for its defense costs in the *Marshall* Litigation.[2]  Indeed, the issue is directly raised by the Delaware Action Crossclaim of National Union,[3] which alleges that its "contribut[ion] to the amount paid to settle the Department of Labor claim . . . exhausted the limits of the 2006-2007 National Union Policy," and the AXIS Answer to that Crossclaim,[4] which flatly "denies" the National Union allegation.

Despite acknowledging and conceding this central point of overlap, AXIS' Opposition fails to address the key Section 1404(a)[5] "interests of justice" factors that compel transfer of this case to Delaware.

First, AXIS does not address the irreconcilable conflict that could arise if the DOL Claim settlement payment issue is decided differently in the two jurisdictions.

---

[1] *Northrop Grumman Corporation v. AXIS Reinsurance Company and National Union Fire Insurance Company of Pittsburgh, PA*, Case No. 1:17-CV-1738-UNA.

[2] *Marshall, et al. v. Northrop Grumman, et al.*, C.A. No. 16-6794, C.D. Cal., ("*Marshall* ").

[3] National Union Answer, Affirmative Defenses and Cross-Claim to the Complaint of Northrop Grumman Corporation ("National Union Answer") at ¶15, attached as Exhibit A to the Declaration of Laura Fraher ("Fraher Decl.") submitted herewith.

[4] AXIS Reinsurance Company's Answer to Crossclaim Filed By National Union Fire Insurance Company of Pittsburgh, PA and Affirmative Defenses ("AXIS Crossclaim Answer") at ¶15, attached as Exhibit B to the Fraher Decl.

[5] 28 U.S.C. §1404(a).

---

1

**NORTHROP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Specifically, AXIS could have an immediate duty to reimburse Northrop defense costs if one court rules that the DOL Claim settlement payment constituted proper erosion of the underlying limits. However, AXIS could be spared from making certain of these payments if another court rules that the underlying limits were not properly eroded by the DOL Claim settlement payment. The precise point at which AXIS' coverage obligations begin (or "drop down" in the words of AXIS) is an essential aspect of determining Northrop's right to coverage from its other insurance carriers, and a single, consistent resolution of this dispute must be reached.

The United States Supreme Court has held that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). This District has repeatedly applied the *Cont'l Grain* holding in cases, like this one, where there is the possibility of inconsistent results. *Geringer v. Strong*, Case No. 2:15-cv-08696-CAS (GJSx), 2016 WL 2732134, at *13 (C.D. Cal. May 9, 2016) ; *Avalon Glass & Mirror Co., LLC v. Elec. Mirror, LLC,* 2:16-cv-06444-CAS (SKx), 2016 U.S. Dist. LEXIS 172256 (C.D. Cal. Dec. 12, 2016); *Zurich Am. Ins. Co. v. DS Waters of America, Inc.*, LA CV 12-09275 JAK (JCx), 2013 U.S. Dist. LEXIS 199197 (C.D. Cal. March 18, 2013); *Intellisoft, Ltd. V. Toshiba Corp.*, CASE NO. SACV 12-0465-AG (MLGx), 2012 U.S. Dist. LEXIS 193724 (C.D. Cal. June 11, 2012); *Puri v. Hearthside Food Sols. LLC*, Case No. CV 11-8675-JFW (SSx), 2011 U.S. Dist. LEXIS 144191 (C.D. Cal. Dec. 13, 2011); *Vehimax Int'l, LLC v. Jui Li Enter. Co.*, CV 09-6437 SVW (JEMx), 2010 U.S. Dist. LEXIS 42801 (C.D. Cal. March 16, 2010); *TMI Prods. v. Audiovox Corp.*, CV 09-1437 JFW (JCx), 2009 U.S. Dist. LEXIS 138463 (C.D. Cal. April 29, 2009); *Mendoza v. Electrolux Home Prods.*, Case No. 1:17-cv-00839-LJO-SKO, 2017 U.S. Dist. LEXIS 182081, at *29 (E.D. Cal. Nov. 2, 2017) ("Finally, not only would transfer to the Middle District of Pennsylvania reduce the cost of discovery, it would also prevent inconsistent judgments."); *Mussetter*

*Distrib., Inc. v. DBI Beverage Inc.*, NO. CIV. 09-1442 WBS EFB, 2009 U.S. Dist. LEXIS 61013, at *13 (E.D. Cal. July 8, 2009) ("In addition to the possible consolidation of discovery and the conservation of time, energy and money, centralizing the adjudication of similar cases will avoid the possibility of inconsistent judgments.") (internal quotations and citations omitted).

Second, there is no basis upon which to argue that other Section 1404(a) factors outweigh the "interest of justice" risks of litigation waste and inconsistent results, and AXIS offers no such argument. This Court's interest in the subject matter of this case is minimal because resolution of the issue raised by AXIS – whether the insurance companies' payments to settle the DOL Claim constituted proper exhaustion – has absolutely nothing to do with the issues in *Grabek*[6] or *Marshall,* and has no effect at all upon the parties to *Grabek* or *Marshall*. Rather, as AXIS concedes, the backbone issue in both the California and Delaware Actions concerns the propriety of insurance company payments with respect to settlement of the DOL Claim, which never was pending before this Court. In addition, the subject matter of the AXIS Complaint – the DOL Claim settlement – involved Northrop and the Department of Labor in Washington, DC, and has no connection with California. Further, AXIS is not entitled to any enhanced consideration that the Court might otherwise provide to a resident plaintiff because AXIS does not reside in the Central District and the operative facts at issue concerning the DOL Claim settlement did not arise in this District. AXIS cites no convenience benefit with respect to witnesses in having this case go forward in California. Finally, California does not have a strong state interest in the resolution of a dispute between a non-California policyholder and two of its non-California insurance carriers with respect to coverage for a settlement agreement that has no connection to California.[7]

---

[6] *In Re Northrop Grumman Corporation ERISA Litigation*, Case No. CV 06-06213-MMM (JCx) C.D. Cal. ("*Grabek*").

[7] Notably, AXIS does not rely upon a "first to file" argument. In any event, the first to file rule does not apply where, as here, the parties and issues are not precisely the same in the two cases.

# ARGUMENT

## I. THE DOL CLAIM SETTLEMENT PAYMENT ISSUE OVERLAPS BOTH THE CALIFORNIA AND DELAWARE ACTIONS, AND LITIGATION OF THAT CORE ISSUE IN DIFFERENT JURISDICTIONS WILL RESULT IN WASTE AND THE RISK OF INCONSISTENT RESULTS.

### A. The California And Delaware Actions Both Require Resolution Of The Core Issue Regarding Whether Payments Towards Settlement Of The DOL Claim Properly Eroded The Limits Of The Insurance Policies Beneath The 2006 AXIS Policy.[8]

AXIS concedes, as it must, that the central issue in the California Action is whether the payments by National Union and CNA towards settlement of the DOL Claim constituted payments for "covered loss" and "proper erosion" of those carriers' limits of liability:

> AXIS alleges that the collective payment by National Union and Continental Casualty under their 2006 policies towards the settlement of a Department of Labor Investigation ("DOL") was not for covered loss. Therefore, AXIS alleges the DOL settlement payments resulted in improper erosion of the Limits of Liability of the 2006 National Union Primary Policy and 2006 Continental Excess Policy.

---

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (first to file rule applies when "two identical actions" are filed in different courts). Moreover the "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Zurich*, 2013 U.S. Dist. LEXIS 199197 at *4 (quoting *Pacesetter*, 678 F.2d at 94.).

[8] The first test under Section 1404(a) is "whether the action might have been brought in the potential transferee court." *Intellisoft*, 2012 U.S. Dist. LEXIS 193724 at *8-9 (citing *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007)). There is no dispute that this test has been satisfied. AXIS has answered the Northrop Complaint in the Delaware Action, concedes that it is subject to personal jurisdiction in Delaware, and has not moved to dismiss or to transfer the Delaware Action. The AXIS Reinsurance Company's Answer to Complaint, Affirmative Defenses, and Cross-Claim ("AXIS Answer") is attached as Exhibit C to the Fraher Decl.

4
**NORTHROP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

* * *

> AXIS does assert, however, that National Union and Continental Casualty improperly eroded the limits of their policies by funding the uncovered DOL settlement, thereby requiring AXIS to drop down. Accordingly, AXIS seeks reimbursement for that portion of AXIS's payment towards the *Grabek* settlement which corresponds to the amount of the uncovered DOL settlement.

AXIS Opp. at 6, 7.

This is precisely the same issue raised by Northrop in the broader Delaware Action, which addresses the DOL Claim settlement payment issue in the context of Northrop's claim for defense cost coverage regarding the *Marshall* Litigation:

> 37. AIG[9] contributed to the amount paid to settle the DOL Claim. AIG exhausted the limits of the 2006 AIG Policy through payment of that settlement amount portion.
>
> 38. CNA[10] also paid a portion of the DOL settlement amount. CNA's payment contributed to the exhaustion of its limits under the 2006 CNA Policy.
>
> 39. The payments by AIG and CNA toward the DOL settlement constituted proper exhaustion of the limits under the 2006 AIG Policy and 2006 CNA Policy.
>
> * * *
>
> 57. The insurance limits of National Union and CNA that underlie the 2006 AXIS Policy have been exhausted. Therefore, AXIS has a direct duty to pay Northrop's defense costs and fees

---

[9] The use of "AIG" in the Northrop Delaware Complaint refers to National Union.

[10] The use of "CNA" in the Northrop Delaware Complaint refers to Continental Casualty.

arising out of the *Marshall* Litigation.
Northrop Delaware Complaint at 14, 18.[11]

AXIS' Answer to Northrop's Delaware Complaint squarely raises the same DOL Claim settlement payment issue:[12]

> 37. Answering the allegations of paragraph 37 of the Complaint, AXIS alleges that National Union contributed to the amount paid to settle the DOL Claim, *but said payment was not for covered loss, thereby improperly requiring AXIS to drop down by the amount of that payment*. Except as expressly alleged, AXIS denies the allegations set forth therein.
>
> 38. Answering the allegations of paragraph 38 of the Complaint, AXIS alleges that Continental Casualty contributed to the amount paid to settle the DOL Claim, *but said payment was not for covered loss, thereby improperly requiring AXIS to drop down by the amount of that payment*. Except as expressly alleged, AXIS denies the allegations set forth therein.
>
> 39. Answering the allegations of paragraph 39 of the Complaint, AXIS denies the allegations set forth therein.
>
> \* \* \*
>
> 57. Answering the allegations of paragraph 57 of the Complaint, AXIS alleges that the insurance limits of the National Union and Continental Casualty policies underlying the 2006 AXIS Policy have been, or should be deemed to be, properly exhausted by the

---

[11] The Northrop Delaware Complaint is attached as Exhibit E to the Declaration of Barry J. Fleishman ("Fleishman Decl."), ECF No. 16-6.

[12] The AXIS and National Union Answers in the Delaware Action were filed after Northrop submitted its initial Motion and could not have been addressed in that initial Motion.

6

NORTHROP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

> payments made towards, or which should be credited towards, the *Grabek* Litigation. *AXIS further alleges the limits of the National Union and Continental Casualty policies underlying the 2006 AXIS Policy were not properly eroded by their funding of the DOL Settlement because the DOL Settlement did not constitute covered loss*. Except as expressly alleged, AXIS denies the allegations set forth therein.

AXIS Answer at 8, 12-13 (emphasis added).[13]

Further, National Union's Cross-claim against AXIS in the Delaware Action squarely raises the DOL Claim settlement payment issue:

> 15. National Union contributed to the amount paid to settle the Department of Labor claim, which exhausted the limits of the 2006-2007 National Union Policy.
>
> 16. *The Department of Labor Settlement constituted a covered loss*.

National Union Answer, Affirmative Defenses and Cross-Claim to the Complaint of Northrop Grumman Corporation ("National Union Answer") at 21 (emphasis added). Paragraph 15 of the AXIS Answer flatly denies National Union's "exhaustion" allegation. AXIS Crossclaim Answer at 3.

Further cementing the dispute between those two insurance carriers regarding the propriety of the DOL Claim settlement payment, AXIS' Delaware Action Cross-claim against National Union alleges that AXIS paid "more than it should have towards the *Grabek* Settlement" because the National Union Policy was prematurely

---

[13] By implication, AXIS also raises the underlying policy limit erosion issue in its Second Affirmative Defense in the Delaware Action, which broadly states that "Northrop's claims against AXIS, in whole or in part, are precluded or limited by the insuring agreements, definitions, terms, conditions, limitations, exclusions, and other provisions of the 2006 National Union Policy, 2006 Continental Policy, and the 2006 AXIS Policy. AXIS Answer at 15-16.

exhausted:

> 23. Concurrently, AXIS paid $9,706,237.92 of the Limits of Liability of the 2006 AXIS Policy to fund the remaining portion of the *Grabek* Settlement, pursuant to a full reservation of rights. In making the payment in the amount of $9,706,237.92, *AXIS contributed more than it should have towards the Grabek Settlement because the payments made by underlying insurers National Union and Continental Casualty towards the DOL Settlement did not constitute covered loss*, thereby requiring AXIS to improperly drop down to the extent of the DOL Settlement was not covered.

AXIS Answer at 21 (emphasis added).

There is no question, then, that the California and Delaware Actions both require resolution of the single issue regarding whether payments made by National Union and Continental Casualty towards settlement of the DOL Claim constituted payments for covered loss and properly eroded those carriers' policy limits.

### B. The Central District Favors Transfer Where, As Here, There Is An Overlap Of Key Issues And The Risk Of Inconsistent Results.

The Ninth Circuit and numerous Central District courts have recognized the need for transfer under Section 1404(a) "to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Zurich*, 2013 U.S. Dist. LEXIS 199197 at *5 (internal citations omitted). In *Zurich*, for example, Judge Kronstadt specifically cited the potential conflict in "proper interpretations of the terms of the insurance policies" as a reason to reject the "first-filed" doctrine and to transfer an action to a different district where an action raising similar issues was pending. *Id*. at *9. Similarly, in *Intellisoft*, Judge Guilford transferred a case involving validity of intellectual property rights out of the district because of the "very real risk of inconsistent rulings." *Intellisoft*, 2012 U.S. Dist.

LEXIS 193724 at *10.  In *Vehimax*, Judge Wilson transferred an antitrust action to avoid "the possibility of inconsistent judgments."  *Vehimax*, 2010 U.S. Dist. LEXIS 42801 at *14-15.  And in *Geringer*, Judge Snyder transferred a bankruptcy-related case "in order to avoid" the possible result of "two conflicting judgments."  *Geringer*, 2016 WL 2732134 at *22 (internal quotations omitted); *accord Avalon*, 2016 U.S. Dist. LEXIS 172256 at *10-11 (transfer ordered where there was a "significant possibility of inconsistent results" from two actions having "substantial overlap of issues").[14]

      The danger here of inconsistent results is obvious.  AXIS alleges that it was prematurely forced to "drop down" and provide coverage because the limits in the underlying policies were wrongly eroded when National Union and Continental Casualty made payments that allegedly were not for covered loss.  If AXIS loses and it is held that AXIS was not forced to "drop down" prematurely, the total amount of its *Grabek* settlement payment – $9,706,237.92 – would apply against the $15 million limits of its 2006 AXIS Policy.  However, if AXIS wins, a reduced amount of the *Grabek* settlement would be deemed to apply against the limits of the 2006 AXIS Policy.[15]  Inconsistent rulings would leave Northrop's program in a confused and chaotic morass, because it would not be clear when the 2006 AXIS Policy limits actually have been exhausted and when Northrop policies in excess of the 2006 AXIS Policy become triggered for coverage.  The danger of AXIS winning in one court and losing in another cannot be tolerated, and this action therefore must be transferred "in the interests of justice."

---

[14] Judge Walter acknowledged this same view in transferring a case to the Eastern District of New York, and stating that "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous litigation and inconsistent results."  *TMI*, 2009 U.S. Dist. LEXIS 138463 at *9-10 (internal citations and quotations omitted).

[15] The amount of the reduction would be based upon the amount of the DOL Claim Settlement deemed to be covered loss.  So, by means of example, if AXIS loses and the total DOL Claim Settlement is deemed covered loss, there would be $5,293,762.08 left in limits on the 2006 AXIS Policy.  If AXIS wins and only $1 million of AXIS' payment is deemed to apply to covered loss, there would be $14 million of limits left on the 2006 AXIS Policy.

9
**NORTHROP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

## II. TRANSFER TO DELAWARE IN THE INTEREST OF JUSTICE IS WARRANTED BECAUSE NO SECTION 1404 FACTORS ESTABLISH A SIGNIFICANT CONNECTION WITH THIS DISTRICT.

To overcome the substantial risk of litigation waste and inconsistent rulings that would result from proceeding in both California and Delaware, AXIS must demonstrate that some other Section 1404(a) factor favoring proceeding in California outweighs those substantial risks. AXIS has failed to provide any such countervailing factor. Indeed, those other factors either are neutral or support transfer of this case to Delaware.

### A. There Are No Significant Connections With California.

Contrary to AXIS' assertion, the subject matter of this lawsuit is not "the settlement of the *Grabek* action venued in this District." AXIS Opp. at 11. Indeed, AXIS' lawsuit has nothing to do with the settlement of *Grabek*, with respect to which settlement payments both have been made to the plaintiffs and will not be affected regardless of the outcome of AXIS' assertions.

The subject matter of this lawsuit is settlement of the DOL Claim and the claim by AXIS that payments made by National Union and Continental Casualty toward that settlement do not constitute covered loss. AXIS has not shown, and cannot show, that the DOL Claim settlement has any significant connection to this Court or California: (i) the DOL Claim never was part of a California court proceeding; (ii) the DOL Claim settlement involved the Washington, D.C.-based Department of Labor and Northrop, which do not have relevant California connections; and (iii) the payments challenged by AXIS were made by National Union and Continental Casualty, which are neither incorporated nor have their principle places of business in California.

### B. Plaintiff's Right To Choose Does Not Weigh In Favor Of Transfer.

The law in this Circuit is that a plaintiff's choice of forum "commands only minimal consideration" if he does not reside in the district where he brought the suit, the operative facts have not occurred there and the forum has no particular interest in

the parties or subject matter. *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.,* Case No. C 03-3711 MHP, 2003 U.S. Dist. LEXIS 26802 (N.D. Cal. Oct. 14, 2003), at *8; *see Mendoza*, 2017 U.S. Dist. LEXIS 182081 at *17-18 (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)) ("A plaintiff's choice 'is entitled to only minimal consideration' if the Court finds 'the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter'"); *Matrix, Inc. v. Woodland Trading, Inc.*, CV 12-9228 GHK (RZx), 2013 U.S. Dist. LEXIS 201116 (C.D. Cal. April 1, 2013) at *16-17 (quoting *Sorenson v. Daimler Chrysler AG*, No. C02-4752 MMC (EDL), 2003 U.S. Dist. LEXIS 6294 (N.D. Cal. April 14, 2003), at *11-12) ("However, 'a plaintiff's choice of forum is accorded little deference where the central facts of the lawsuit occur outside the plaintiff's chosen forum.'"). Indeed, the weight of "a plaintiff's choice of forum" is "substantially reduced where the plaintiff's venue choice is not its residence." *Fraser v. Brightstar Franchising LLC,* Case No. 16-cv-01966, 2016 U.S. Dist. LEXIS 107900, at *20-21 (N.D. Cal. Aug. 15, 2016 (internal quotations omitted).

AXIS does not claim, because it cannot claim, any connection to California that would warrant its "right to choose" being given significant weight in the Section 1404(a) analysis. In fact, AXIS admits that it is an Illinois corporation, with its principle place of business in Georgia. Northrop Delaware Complaint at 3; AXIS Answer at 2. Moreover, as discussed above, the "operative facts" at issue concern settlement of the DOL Claim and payment of settlement amounts toward the DOL Claim, of which neither has any significant California relationship. In short, AXIS has not demonstrated any reason why its choice of forum should be given any weight whatsoever, and, in any event, "the interests of justice can trump plaintiff's choice." *Intellisoft*, 2012 U.S. Dist. LEXIS 193724 at *15.

  **C.**  **Convenience Of Witnesses Does Not Weigh Against Transfer.**

AXIS states that it is "aware of no necessary witnesses for the California Lawsuit." According to AXIS, therefore, this factor is neutral. Even if witnesses do

become necessary, AXIS does not assert that any witnesses are in California.  In any event, "consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *TMI*, 2009 U.S. Dist. LEXIS 138463 at *9 (quoting *Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986) and citing *Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987)).

### D. California Does Not Have A Strong State Interest In This Case.

As discussed above, this case involves a dispute between non-California entities (Northrop and AXIS) over the ramifications of settlement payments made by non-California insurance companies (National Union and Continental Casualty) with respect to a non-California proceeding (the DOL Claim) involving non-California entities (Department of Labor and Northrop).  Contrary to the bald assertion by AXIS (AXIS Opp. at 15), there is very little reason to believe that California has a strong interest in this dispute or that California law would apply.

Further, given that (i) resolution of assertions made by AXIS will have absolutely no impact on *Grabek* or *Marshall*, and (ii) the core of this dispute involves the DOL Claim – not *Grabek* or *Marshall*, there is no appreciable judicial economy that will be served by this Court handling the lawsuit.  In any event, district courts generally recognize that "federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State" (*Ganezer v. DirectBuy, Inc.*, CV-08-8666 GAF (RCx), 2012 U.S. Dist. LEXIS 198190, at *16 (C.D. Cal. Jan. 30, 2012) (internal quotations omitted)), and "courts in one state are fully capable of applying another state's substantive law." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal 2013) (internal citations and alterations omitted). *Accord Mendoza*, 2017 U.S. Dist. LEXIS 182081 at *33; *see Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04298 SI, 2007 U.S. Dist. LEXIS 95240, at *15 (N.D. Cal.

Dec. 14, 2007) ("other federal courts are fully capable of applying California law").

## III.   CONCLUSION

For the foregoing reasons, Northrop respectfully requests that the Court grant its motion to dismiss or stay this action or, in the alternative, transfer this action to the District of Delaware.

DATED:  February 15, 2018          KILPATRICK TOWNSEND & STOCKTON, LLP


                                                  By: /s/William T. Um
                                                         William T. Um
                                                         Attorneys for Defendant
                                                         NORTHROP GRUMMAN
                                                         CORPORATION